# Verona Borough *v.* Allegheny Valley R. R. et al., Appellants.

*Boroughs—Streets—Notice of opening—Local act of April 8, 1848.*

Where an act relating to the location and opening of streets provides that damages are to be assessed only upon the application of the owner, and he is liable to be barred if he does not apply, the owner is entitled to the notice provided by the act with all the accompaniments of time and circumstances that the statute prescribes in his favor.

Under the local act of April 8, 1848, P. L. 415, providing that the council of a borough may " direct and determine the location and limits " of a street, and that " a plan or specification of such location shall be made and deposited in the office of the recording regulator of the borough for public examination or inspection, whereof notice shall be given in at least two newspapers," a property owner is entitled to the notice provided by the act, and notice of the opening of the street will not answer for notice of its location.

*Plan of street—Notice—Estoppel.*

Where the plan of a street prescribed by the local act of April 8, 1848, P. L. 415, is in itself insufficient, and was not adopted or approved by the borough authorities, a property owner cannot be estopped to deny the validity of the location of the street by actual notice of the plan, and the proposed action of the borough.

*Dedication—Evidence—Public use.*

Where the dedication of a street is sought to be established either by the recording of a plan or by the actual use of the street by the public, or by such an acceptance by the public as would be binding upon the owner by estoppel, the evidence must be clear.

Argued Oct. 31, 1892.   Appeal, No. 97, Oct. T., 1892, by defendant, from decree of C. P. No. 1, Allegheny Co., Dec. T., 1888, No. 296, enjoining defendant from obstructing street. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for injunction to restrain erection of building on alleged street.

The bill alleged that the plaintiff is a municipal corporation, with power to locate and open public highways; that an avenue called Railroad avenue was duly located and opened on the east side of the right of way of the Allegheny Valley Railroad Company, of the width of fifty feet on each side thereof, in said borough, by ordinances duly passed by the municipal authorities on June 7, 1871, and Oct. 13, 1871, and a plan thereof was duly filed in the office of the recording regulator of said borough, and notice of said ordinances and of the filing of the plan was published in two newspapers in said county; that the borough not having defaulted in the payment of any damages assessed for the opening of said avenue, the same became and is a public highway; that defendants threaten and intend, and, although notified not to do so, are about to erect on that portion of said Railroad avenue, west of the right of way of said company, a building, or station house almost completely obstructing said West Railroad avenue, and that said obstruction is a nuisance and without authority of law. The bill prayed that defendants be enjoined from erecting said building.

The answer denied that said alleged Railroad avenue on the west side of the right of way had ever been lawfully opened or used by the public as a highway or that the same ever was or became a public highway over the property of the Allegheny Valley Railroad Company, including the locus in quo.

By an amendment to the bill it was further alleged that at, prior and subsequent to the passage of said ordinances of 1871, William Phillips was owner of said company's land, and in

1871 he laid out a plan of lots and located Railroad avenue on each side of said right of way and dedicated the same to public use, and conveyed lots according to said plan as recorded in the recorder's office of Allegheny county. This was denied by an amendment to the answer.

The case was referred to R. B. Petty as master, from whose report it appeared that Verona borough was incorporated under the act of May 10, 1871, P. L. 705. Under this act the power and authority of the borough with reference to the location and opening of streets was prescribed by the act of April 8, 1848, P. L. 415. Section one of the latter act was as follows:

"Section 1. Be it enacted, etc., that the town council of the borough of Birmingham, in the county of Allegheny, when they shall consider that the opening of any new street, lane or alley within said borough . . . . is necessary for the use and convenience of the public, shall have power and they are hereby authorized thereupon to direct and determine the location and limits of such street, lane or alley, . . . and a plan or specification of such location shall be made and deposited in the office of the recording regulator of said borough for public examination and inspection, whereof notice shall be given in at least two newspapers published in the county of Allegheny; and any owner or owners of ground lying on the line of such street, lane or alley who shall consider that he, she or they shall suffer damage from the opening or widening of same, may apply by petition to the next court of quarter sessions of the county of Allegheny, by whom such order and appointment shall be made, and the same proceedings in every respect shall be had for the view, appraisement of damages, the report thereof and confirmation of the same, as are directed by the general road laws of this commonwealth. And the said councils, so soon as they shall have caused payment of damages assessed to be made to persons entitled to receive the same according to the report of the viewers returned to said court, and confirmed by the same, may proceed to cause such street, lane or alley to be opened forthwith. And the same shall forever thereafter be taken and allowed to be a public highway for the same uses and purposes as the other streets, lanes and alleys within said borough; provided, nevertheless, that if the damages ascertain ed in the manner aforesaid shall not have been paid within one

year from the time of the confirmation of the report of the same, then the proceedings had in pursuance of the provisions of this section shall be thereafter null and void."

The facts relating to the location of Railroad avenue by the borough authorities appear by the opinion of the Supreme Court.

The master found that the alleged street had not become a public highway either by municipal action or dedication, that the conversations, recited below, show an impression that the avenue was a legally constituted highway, but an intention to dedicate could not be inferred from the declarations made under the circumstances. The master therefore recommended that the bill should be dismissed. Exceptions to the master's report were sustained by the court, and a decree entered in accordance with the prayer of the bill.

The facts as to dedication found by the master are reviewed in the opinion of the court below as follows:

" The evidence on part of the plaintiff shows that Railroad avenue, from the south line of the borough to the south line of defendants' property, has been fully opened and improved, and that the public used the street over defendants' property from the south line to the distance of from two hundred to seven hundred feet, a point about where the proposed building is being erected, and a small portion at the north line, and that the remainder was not used because it was impassable, a portion of the obstruction being natural and a part by the action of the railroad authorities.

" We agree with the master that the evidence is not sufficient to justify a finding of a dedication by use alone, but we think that the evidence is sufficient to justify finding that there was an actual dedication accepted by the public by which the defendants are estopped.

" The land in dispute is part of a tract of land consisting of about four hundred acres, conveyed to Wm. Phillips by James Verner by deed dated July 5, 1869. Over this land the railroad had been constructed, the company claiming a right of way sixty-six feet in width. Soon after its purchase Phillips made a plan of lots, laying out streets and connecting them with other streets in the borough. Upon this plan about seventy acres were designated as railroad property, and alongside

the railroad a street or streets were designated, fifty feet in width, on each side of the railroad right of way. The exact date of making this plan does not appear, but it must have been early in 1870, as he sold lots in accordance with it in the fall of 1870.

" The defendants claim, and the master has found, that the railroad company became the owner of the seventy-one acres on July 1, 1870. The evidence justifies this finding. The railroad company was in possession early in 1871. The admission of Phillips upon his plan, and entries subsequently made upon the books of the company by his direction, show it, and the latter shows that the title accrued as of July 1, 1870.

" There was no deed made by Phillips to the company, and the entries upon the books were not made until November, 1872. A deed was drawn bearing date          1872, but was not executed. Nothing had ever been paid on account of the purchase until November 1, 1872, when notes were given including interest to that date. No deed was ever executed by Phillips, but he continued to hold the title until his death in          and a deed was made by his administrators after his death.

" It thus appears that at the time the Phillips plan was made and proceedings for opening the street were had, Wm. Phillips was the holder of the legal title to the property, and the defendants had an equitable title by some agreement which has not been shown.

" It further appears that at this time he was president of the Allegheny Valley Railroad Company. May it not be assumed that his plan was made before the equitable title of defendants accrued, and that he subsequently made it under his power as trustee or president of the company?

" The subsequent conduct of the parties adds weight to the assumption. At the time the plan was made the property was in Penn township. The act incorporating Verona borough was approved May 10, 1871. On June 7, 1871, the borough councils adopted the street thus laid out and extended it on each side of the property to the limits of the borough. The acceptance, therefore, does not depend upon actual use by the public, but is evidenced by the formal act of their representatives.

" In October following they passed an ordinance to open the

street, and have since actually opened it on both sides of the defendants' property. [The officers of the company knew of this action and made no application for damages. They afterwards recognized it.] [7] Mr. Tomlinson says that when the railroad company was taking gravel out of their land, he, as burgess, notified Colonel Lawrence, the superintendent, that they must not take gravel out, as it was a public road, and Colonel Lawrence agreed to fill it up or level it up after the removal of the gravel. That afterwards, when an old boat was placed on the line of the street, Mr. McCargo, the superintendent, asked him, as burgess, to have it removed.

" Mr. Moore testified that at one time when some discussion was had in reference to another street, Mr. Scott, then president of the railroad company, said that West Railroad avenue would be sufficient for the wants of the borough. Mr. Cribbs testified, ' I said to Mr. Scott it was an outrage that we had to go away around the round house to cross Plum creek and get up to Hulton. Then Mr. Scott made the remark, " You have West Railroad avenue." I said it was in bad shape to get up, as the railroad company had taken the gravel out and made it impassable, and we could not get up that way at present. He gave me to understand that the company would fill that up and make it passable in a short time. I told Mr. Scott that I always understood that Mr. Lawrence, former superintendent, had told the people of the borough that if they would permit him to take the gravel out that he would fill it up with cinder. Mr. Scott said, " Certainly ; it was always the intention to fill it up." I believe I told Mr. Scott that they had already taken one street from us—that is East Railroad avenue. They had their building on it at that time. He said, " You have West Railroad avenue. We will have that filled up and made passable." '

" In this connection the testimony of plaintiff's witnesses that they traveled over this street on defendant's property at the south side six hundred or seven hundred feet, and at the north side seventy-five to one hundred feet, and that some work had been done upon it by the street commissioners, should have some weight.

[" In view of all the evidence we think the master should have found that the street had been dedicated to public use and accepted by the public."] [8]

*Errors assigned* were, inter alia, (1) decree of court; (7, 8) portions of opinion in brackets, quoting them.

*William R. Blair*, with him *William Scott* and *George B. Gordon*, for appellants.—Not only must the authority to municipal corporations to take private property be expressly conferred, and the use for which it is taken specified, but the power with all constitutional and statutory limitations and directions for its exercise must be strictly pursued: 2 Dillon, Mun. Corp. § 604; Harrisburg v. Sheck, 104 Pa. 53.    The evidence of dedication was insufficient: Griffin's Ap., 109 Pa. 150; Com. v. R. R., 135 Pa. 256; Weiss v. Bethlehem, 136 Pa. 294.

*J. P. Hunter*, for appellee.—The ordinance of June 7, 1871, was within the power of council to enact: Hill v. Commissioners, 1 Pars. Eq. 511; Hannibal v. Hannibal & St. Jo. R. R., 49 Mo. 480; Sugar Refining Co. v. Jersey City, 26 N. J. Eq. 255; Coxe v. Phila., 47 Pa. 11; Phila. v. Tryon, 35 Pa. 401.    But in addition to the power to lay out this street under the act of 1848, we further suggest that council had full power to locate the street under the general borough act of 1851.

The damages recovered are not for the locating of the street, but for the taking of his property for such street, for the "opening" of the same: Pittsburgh v. Scott, 1 Pa. 309; Coxe v. Phila., 47 Pa. 11; District of City of Pittsburgh, 2 W. & S. 321; Sower v. Phila., 35 Pa. 231; Forbes Street, 70 Pa. 125; Verona Borough, 118 Pa. 174.    The proceedings were regular: Verona Borough's Ap., 118 Pa. 173; Stone v. Cambridge, 6 Cush. 270; Steuart v. Baltimore, 7 Md. 500.    Plaintiff is estopped: Barclay v. Howell's Lessee, 6 Pet. 506; Martta v. Deihl, 37 Iowa, 250; Trickey v. Schlader, 52 Ill. 78; Connehan v. Ford, 9 Wis. 240; Ogden v. Stokes, 25 Kas. 518; Mathews, Pres. Ev. 335.

OPINION BY MR. JUSTICE MITCHELL, January 3, 1893:

The most important question is whether there was a legal opening of West Railroad avenue.    The borough council attempted to do this under the act of 1848, as is shown by the mode of proceeding adopted.    But the ordinance of June 7, 1871, was not published, nor was the plan made as prescribed by the act.    The notice required to be thus given to the pro-

perty owners along the line of the proposed street was not given. It is argued that the substantial interest of the property owners is in the opening, not the location, and that notice of the former serves every purpose. But this argument cannot prevail against the plain words of the statute. It is " the location and limits " of the street that the council is to determine, and " a plan or specification of such location," that is to be made and deposited for public examination and inspection, and of which notice is to be given. By the terms of the act, damages are to be assessed only upon the application of the owner, and he is liable to be barred if he does not apply. He is therefore entitled to the notice, with all its accompaniments of time and circumstances, that the statute prescribes in his favor. Moreover the statute requires not only notice, but a plan or specification of the location. No such plan appears to have been made at the time or in pursuance of the ordinance of June, 1871, but on October. 13, 1871, a second ordinance was passed directing the opening of West Railroad avenue, "according to plan in the recording regulator's office," and on the same day a resolution was passed instructing the street committee to employ a competent engineer to survey and make a plan of the borough, and to define the. location of Railroad avenue, and to report at the next regular meeting of the council. The subsequent action and ordinances for several years, at least as late as 1874, show conclusively that no plan was settled or approved by the council. A plan was made at some time following the ordinance of October, 1871, but the master has found that it was a mere outline or sketch conveying no more information than the general terms of the locating ordinance itself, and was not such a plan as the statute contemplates. We see no reason to doubt the correctness of this conclusion, but even if the plan was in itself sufficient to satisfy the statute, there is the entire absence of the municipal adoption or approval to make it binding on the borough and thereby on the property owners. This is plainly contemplated by the act of 1848, and is implied by the language of this court in Borough of Verona's Appeal, 108 Pa. 83.

The locating ordinance of June 1871 was not published, nor was any plan made under or in pursuance of it. The ordinance of October 1871 was published, but it misrecited

the locating ordinance as of July instead of June, and the plan that was made after its passage, such as it was, instead of being deposited in the recording regulator's office, was handed by the outgoing regulator, not to council for its approval, but to the burgess, and was advertised as in his possession for inspection. It appears that at that time there was no recording regulator in office, and we will not say that under the circumstances the deposit in the hands of the burgess might not have been a sufficient compliance with the statute, but it is one item in the series of objections to the validity of the attempted opening of the street.

Not only was no plan made or approved under the locating ordinance, and notice thereof given, but the next term of the quarter sessions to which property owners might apply for damages, had not expired, when the ordinance of October 1871 directing the opening of the avenue was passed. This action was plainly invalid. The conditions under which the council had authority to order the opening of the street had not been complied with.

On this branch of the case we find the whole proceeding so full of irregularities and defects that it cannot be sustained.

What has been said disposes also of the contention that the appellant is estopped by actual notice to its officers of the plan and proposed action. The plan was not such as was necessary and the evidence is conclusive that council itself did not consider either the location or the plan sufficiently adopted or approved. Waiving all other questions as to whether the facts would constitute a notice binding on the appellant, it is plain that the plan cannot have any more efficacy against the railroad company than against the council. The whole subject of a plan was open and required further authoritative action by the council, and appellant was not bound to move till such action had been taken.

It remains to be considered whether there was any dedication of this land to the public use. The master's report shows that the equitable title was in the appellant before the deed and plan by Phillips which are claimed as a dedication. To bar appellant's right therefore the evidence should be clear, but it was not so. The plan was indefinite as to date, the act to make it binding was not completed by Phillips himself, but

after his death, and after the appellant was in exclusive possession. And the master finds that the plan did not include the railroad's property. The master therefore was right in reporting that there was no dedication by Phillips which affected appellant's title.

The learned court below conceding that the evidence was not sufficient to establish a dedication by use alone, thought that it would justify a finding of a dedication accepted by the public by which appellant was estopped. In this view we are unable to concur. There is an entire failure of evidence from which any intent to dedicate can be fairly inferred. The evidence on this point is fully reviewed by the master and it is unnecessary for us to go over it in detail. We are of opinion that it shows merely a permissive acquiescence by the railroad company in an occasional and varying use by the public, such as was held insufficient in Com. v. R. R. Co., 135 Pa. 256, 273.

Decree reversed, injunction dissolved and bill dismissed at the cost of the appellee.