# Shamokin, Appellant, *v.* Helt.

*Roads and streets—Dedication by plan—Evidence—Act of May 9, 1889, P. L. 173—Binding instructions.*

1. In proceedings ·to determine whether a certain piece of land was part of a borough street, where it appeared that such land was indicated on a plan of lots laid out by the owner before the incorporation of the borough, but where there were no lines, names or figures on the map or plan showing that the owner intended to dedicate the strip of land as a public highway, and where no street was designated on the property in dispute by lines, or otherwise, the lower court properly found that there was no dedication of the locus in quo for public use by the acts of the owner who plotted the lots.

2. Where in such case it appeared that more than fifty-eight years had elapsed after the plotting of the lots, and that the land in dispute had never been opened to, or used by the public, the Act of May 9, 1889, P. L. 173, providing in effect that streets laid out on plans of lots which have not been opened or used by the public for twenty-one years next after the laying out of the same, shall not be opened thereafter without the consent of the owner, or owners of the land whereon the streets are plotted, applied, and the court should have directed a verdict for the record owners of the land.

Argued May 10, 1915. Appeal, No. 361, Jan. T., 1914, by plaintiffs, from judgment of C. P. Northumberland Co., Dec. T., 1911, No. 157, for defendants, in case of The Borough of Shamokin and William H. R. Smink, chief burgess, v. Hiram P. Helt, Annie W. Reese (nee Helt), Magdalena Henninger (nee Helt), Ella B. Schultz (nee Helt), Sylvester I. Helt, children and heirs at law of Louisa Lauer (nee Helt), deceased. Before BROWN, C. J., MESTREZAT, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Framed issue to determine title to a plot of land in Shamokin Borough.

MOSER, J., filed the following opinion sur plaintiff's motion for a new trial:

In this case the defendants presented a petition to the court setting forth that they were in possession and were the owners in fee simple of a triangular piece of ground situate in the Borough of Shamokin and lying immediately east and adjacent to what is designated and marked block number 46 on the plot or plan of the said borough. That the Borough of Shamokin claimed that William L. Helfenstein, proprietary owner, laid out and dedicated to the public use a certain street of the width of 80 feet, upon, over and covering the said lot or piece of ground owned and in possession of defendants and that by reason thereof the Borough of Shamokin acquired the title and right of possession to said premises for a public street or highway, and praying the court to grant a rule on said Borough of Shamokin to show cause why an issue should not be framed between the parties to settle and determine their respective right and title to the said lot or piece of ground in accordance with the provisions of the Act of June 10, 1893, P. L. 415. The cause came on to be heard and the court ordered and decreed that a trial by jury be had upon the matters therein stated and an issue was awarded and framed accordingly. It was admitted that the said town of Shamokin was laid out principally on the Samuel Clark tract and was agreed between the parties that the title to the portion of the said Samuel Clark tract on which the said Shamokin town plot was laid out, was in William L. Helfenstein in the year 1853. During that year Mr. Helfenstein published and circulated a book or pamphlet in the nature of a prospectus to advertise and promote the sale of town lots. With this pamphlet he also published and circulated a plot or plan showing the lots and block, streets and alleys and general lay out of the said town of Shamokin, which has been known in this case as the Helfenstein map. By deed dated September 7, 1853, William L. Helfenstein sold and conveyed a large number of lots in ac-

cordance with the said map or plan as numbered and designated thereon.  On January 3, 1865, after the incorporation of Shamokin Borough, within the territorial limits of which the premises here in question were included, the borough council passed an ordinance providing, that from and after the passage thereof all streets, lanes and alleys opened or laid out or drawn or marked on the plans or plots of the said Borough of Shamokin or on the plans or plot of those who had made and laid out the additions to the original plan or plot of the said borough within the limits of the boundaries of the corporation are declared to be public streets, lanes and alleys.  On January 30, 1886, at the suit of Paul and Louisa Helt, a special injunction was awarded restraining the Borough of Shamokin from opening for public use a street on the east side of said block 46, being the premises here in dispute, and on April 11, 1887, the cause was continued by consent, not to be put on the list again unless specially ordered, and nothing further was ever done in the matter.  It has not been shown that a street or public highway was ever opened upon or over the premises involved, or that the same was ever used as a public highway.

By deed dated March 11, 1863, William L. Helfenstein conveyed all his interest in the Samuel Clark survey to Charles P. Helfenstein and subsequently the said Charles P. Helfenstein and his wife, by deed dated the 23d day of September, 1864, granted and conveyed unto Samuel E. Martin the triangle immediately east of block marked 46 including the premises here in dispute.  The said Samuel E. Martin and his wife, Wilhelmina, by deeds dated the 15th day of June, 1875, and the 11th day of January, 1883, sold and conveyed the said triangular piece of ground lying immediately east of block 46 and south of Carbon Run Creek in the said Borough of Shamokin to Louisa Helt, the second deed including the property first puchased as well as the additional ground secured by the second purchase.

The defendants in this action, being the children and heirs of said Louisa Helt, are claiming the said triangular piece of ground as their own private property by virtue of the above recited deed and the evidence shows that they, their ancestors and predecessors in title, have been in possession thereof and have maintained improvements thereon continually for a period of more than forty years. The plaintiff's contention is that the said William L. Helfenstein dedicated the major portion of the said premises as a street or public highway; that a strip, of the width of 80 feet, immediately east of the said block marked 46 is a portion of the street known as Fourth street in Shamokin Borough. The plaintiff insists that it was the intention of Helfenstein to dedicate the said premises for public use and that he so indicated by the map or plan he published and used. That the title to the said premises passed out of the said William L. Helfenstein by virtue of the dedication aforesaid, nor was the same affected in any way by the deeds from the said William L. Helfenstein through Charles P. Helfenstein and Samuel E. Martin to Louisa Helt and therefore the defendants have virtually no title to the said premises and certainly no right to interfere with the public use thereof by the borough. There is nothing on the map to indicate that it was intended that the piece of ground in question should be a public highway except that the said triangle was left vacant or is not enclosed in any lines. Much of the triangle, however, extends east of the 80 foot street limit so that if it is to be considered a street from the mere fact that it is vacant or not inclosed it might as well be said that all of the ground in that vicinity east of block 46 and south of Carbon Run Creek was intended for street or public highway. So far as the lines of the map indicate it might just as well be said that the ground or premises in dispute are a part of Chestnut street as that they are a part of Fourth street. To determine with certainty the intention of the publisher or the proprietary owner

from what is shown on the map by the lines in the vicinity of this disputed ground is no easy task. In the first place Fourth street does not extend northward beyond Pine street or at least is not marked as such but the extension thereof is a 25 foot alley running northward from Pine street to Chestnut street, farther than which it could not be extended in a straight line without running into block 48. Third street is moved westward at Chestnut street and continues north immediately along the western boundary line of the creek. The defendants contend that it is preposterous to say that the said proprietary owner intended that Fourth street, which is 80 feet wide, should run along the eastern line of this small stream since Third street runs immediately along the western line thereof. Again, if this should have been the intention at the time the town was plotted the question arises, whether or not it was further intended that Fourth street should start at Chestnut and run over this property south of Carbon Run Creek, since the opening of the street according to such a plan would necessitate the erection of quite an expensive bridge. The defendants' contention is that the drawing plainly discloses the fact that the vacant space running along the eastern side of the stream and north of Chestnut street was intended as creek bank and not as a street or it would be so marked. The Shipman map introduced in evidence, as well as other testimony, shows that considerable of the territory north of Carbon Run and south of Arch street was, until comparatively recent years, a veritable swamp, generally covered with water. In view of all these circumstances we submitted the question to the jury under what we thought proper instructions and they rendered a verdict in favor of the defendants

The plaintiff complains of this and insists that the court erred in not directing a verdict for the plaintiff, contending that there was a dedication of the premises in question to public use by William L. Helfenstein when

he published the aforesaid map or plan which became irrevocable when he adopted the same and sold lots in accordance therewith.   In Tesson v. Porter Co., 238 Pa. 504, the Supreme Court of Pennsylvania, through Mr. Justice BROWN say: "If anything is to be regarded as settled, it is that, when one who is the owner of a tract of land in a municipality cuts it up into lots and sells them as laid out on a plan which he has adopted, showing streets and alleys thereon, there is not only an implied covenant by him to the owner of each lot that the streets and alleys, as they appear upon his plan, shall be forever opened to the use of the public, but a dedication by him of the same as highways to the use of the public forever, and the municipality itself cannot extinguish the easement which each lot owner thus acquired by private contract with the owner of the plotted ground: Transue v. Sell, 105 Pa. 604; Quicksall v. Philadelphia, 177 Pa. 301; Garvey v. Harbison-Walker Refractories Company, 213 Pa. 177; O'Donnell v. Pittsburgh, 234 Pa. 401." In Osterheldt v. Philadelphia, 195 Pa. 355, it was held: "A deed of land, in accordance with a plan of lots and streets, made by the owner of the land, has the effect to dedicate to public use the strips of land designated as streets, and gives the right to use the streets not only to purchasers of lots on the plan, but to all other persons who might desire to use the streets; and the dedication is irrevocable by either the grantor or those claiming title under him.   The deed operates as a relinquishment of all claims for damages for the use of the land, when the street is actually opened.   It is only in cases where the Act of May 9, 1889, P. L. 173, applies, that damages may be recovered.   And in Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92, at p. 100, the court say: "But an owner who makes a plot on which spaces are left indicating the dedication of roads or streets not previously projected by the public authorities, and sells lots with reference to the plot, cannot recall his dedication, for he leaves the streets to be opened by the proper local

authorities at such time as the public interest may require, and of this they are the judges." There is no doubt but what these principles are uncontrovertible as legal propositions. Plaintiff's counsel most earnestly insists that they controlled the situation presented and were decisive in determining the matters here in controversy in favor of the plaintiff.

If William L. Helfenstein had, in any way, clearly indicated on the map he published, either by lines drawn or names or figures, that he intended to appropriate a strip of ground running north from Chestnut street over the premises here in dispute as a public highway he and his successors in title would certainly be bound thereby; but the great difficulty is to determine with certainty just whether he did dedicate or intend to dedicate the same to public use. There is no question about the streets, lanes or alleys, which are marked and designated on the map, but this property is not marked and no street is designated thereon by lines or otherwise so that it is very questionable whether or not the then owner ever intended that Fourth street should run across and over the locus in quo. In Verona Borough v. Allegheny Valley R. R., 152 Pa. 368, it was held: "Where the dedication of a street is sought to be established either by the recording of a plan or by the actual use of the street by the public or by such acceptance by the public as would be binding upon the owner by estoppel, the evidence must be clear." In the present case it cannot be said that there is clear evidence of a dedication. The manner in which Fourth street is laid out and designated on the map would rather incline our conclusions to the contrary. We must be persuaded from what appears upon the drawing, that the publisher of the map intended the portion of the ground in dispute as street, and the plaintiff contends as Fourth street, but when we consider the broken and indefinite way in which Fourth street is designated on the map, not being named at all north of Pine street, we are far from being con-

vinced by clear evidence, that the plaintiff's contention is sustained. Dedication to the public use must rest on the intention or clear assent of the owner, and must be under such circumstances as to indicate an abandonment to the use of the community. Scott v. Donora Southern R. R. Co., 222 Pa. 634; Cotter v. Philadelphia, 194 Pa. 496. The burden in this case is upon the plaintiff to show, not only that William L. Helfenstein dedicated this land to public use but that the street had been opened in accordance with the dedication and accepted by the public as a highway; that the very land over which it attempts to exercise dominion was within the lines of the highway as opened and accepted: Washington Female Seminary v. Washington Borough, 18 Pa. Superior Ct. 555, at p. 572. Counsel for the plaintiff complains because we instructed the jury to be governed by the Helfenstein map entirely in considering the question of dedication, and contends that the Cleaver and Fowler maps should have been considered as well. So far as the locus in quo is concerned these maps are identical and our thought was to keep the minds of the jurors away from the more recently made maps, plans and blue prints introduced in evidence. We are confident that no injury resulted from these instructions. Nor do we think injury was done when we told the jury, in substance, that the publisher of the map might have intended to dedicate ground for a street or for public use north of Carbon Run and still there might be some question as to his intentions on the south side of the said stream. A dedicated street becomes a public highway only to the extent to which it is actually opened and used: Oakley v. Luzerne Borough, 25 Pa. Superior Ct. 425; Commonwealth v. Royce, 152 Pa. 88. A deed calling for the line of a street in one block is no dedication of the same street in another block. Easton Borough v. Rinek, 116 Pa. 1. The opening of a highway throughout part of its length does not affect the status of the unopened portion. Washington Female Seminary v. Wash-

ington Borough, 18 Pa. Superior Ct. 555. Under all the circumstances thus related we are quite confident that the plaintiff in this action has no good reason to complain because we submitted the question as to whether or not there was a dedication to the jury.

If there was a dedication of the locus in quo for public use it was by virtue of the actions of the owner in 1853. There is nothing in the case that would justify the imputation of a rededication, and no effort was made to open the street until 1886, when plaintiff was restrained by a special injunction and at which time all efforts to open the street or determine the legal rights of the parties were discontinued and abandoned. We are of the opinion that the street cannot be now opened without compensation to the defendants for any damages sustained. In Quicksall v. Philadelphia, 177 Pa. 301, (p. 304) the court held: "The dedication of the plaintiffs' grantors in 1848 operated as a relinquishment of all claims for damages for the use of the land within the lines of the streets for street purposes, and no claim for damages can be sustained unless by reason of the Act of May 9, 1889, P. L. 173. The language of the act is: 'That any street, lane or alley laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened.to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out.' The purpose of the act is to relieve land upon which streets have been laid out by the owner, but not opened or used for twenty-one years, from the servitude imposed. To what extent it may affect the rights of those who by purchase of lots within the tract have acquired the right of the use of all the streets marked on the plan we need not now inquire. We have before us only the question of the right of the municipality to open the streets without compensation

by reason of the dedication in 1848. As against this right the act establishes a limitation of time where none before existed. The streets were laid out forty-four years before the commencement of these proceedings. They have not been opened to, or used by, the public. During the whole of this time the beds of the streets have been in the possession of the abutting owners and used by them for the purpose of quarrying stone. No possession or use was claimed by others. The case, we think, comes within the meaning of the Act of 1889 and it is now too late for the city to assert the right founded upon the dedication in 1848." "While title by adverse possession cannot be acquired in land which has been dedicated to the use of the public for the purpose of a street, the rule will not obtain unless the dedication has been accepted. Where an owner of land lays the land out in a plan of lots and records the plan, but the streets indicated are never accepted by, open to or used by the public, and the owner and his successors in title for over fifty years keep the land fenced and cultivated, a railroad company, in condemning a portion of the land, cannot claim that it is not liable for the depreciation in value of the whole of the tract because of a division of a tract by a street or streets. In such a case it is immaterial if the owner of the land within twenty-one years prior to the condemnation proceedings described the land in partition proceedings and in an affidavit filed under the Act of May 31, 1901, P. L. 352, by reference to the recorded plan of lots." Scott v. Donora Southern Railroad Co., 222 Pa. 634. So in Oakley v. Luzerne Borough, 25 Pa. Superior Ct. 425, it was held that the Act of May 9, 1889, P. L. 173, relieves land upon which streets have been laid out by the owner, but not opened or used for twenty-one years, from the servitude imposed. If the municipality proceeds to open the street after that time the owner is entitled to damages. In Woodward v. Pittsburgh, 194 Pa. 193, at p. 199, it was held: "The right of Mrs. Woodward to recover damages for the

taking of one-half of Arabella street from her as the owner, to the center thereof, should have been submitted to the jury, with instructions that if Watson had sold her grantor the strip of land facing on the street according to a plan upon which he had laid out lots and streets, among them, the street in controversy, and that more than twenty-one years had elapsed from the time of her husband's purchase until the City of Pittsburgh had actually opened the street, she would be entitled to damages for the land so taken, if any had been sustained." And "The fact that a street which has been dedicated to public use by the owner of the land was adopted by resolution by the borough authorities, and placed on a borough plan, is not in itself sufficient to constitute an opening of the street under the dedication within the meaning of the Act of May 9, 1889, P. L. 173." Chester v. Thurlow Land Company, 13 Pa. D. R. 285. And the right of the owner is not defeated by the fact that, in a conveyance prior to the expiration of twenty-one years, reference was made to the recorded plan and to the streets thereon, as such reference does not give rise to an implication of a new dedication of the land for streets: Woodward v. City of Pittsburgh, 194 Pa. 193.

In the instant case, if there was any dedication of the premises involved to the public use, it was brought about by the publication of the map and the sale and conveyance of lots in accordance therewith by William L. Helfenstein, and took place in 1853. The defendants and their predecessors in title, have been in possession of the property, according to the testimony, since 1862 or 1863, and have paid taxes to the plaintiff borough and other authorities authorized to levy the same for a number of years. No street was ever opened or used by the public over and across the said premises from the time of the said alleged dedication to the present day. In 1886, thirty-three years after the plan of the town of Shamokin was adopted, an evidently indifferent attempt was made to open Fourth street over the said locus in quo, but

when the plaintiff was restrained by a preliminary injunction the object was abandoned and no further attempt was ever made.  Applying the legal principles laid down in the authorities above cited to these facts we are inevitably led to the conclusion that a street or public highway could not be opened over the premises in dispute after the passage of the Act of May 9, 1889, without the consent of the owner or owners of the said land. The defendants' petition for the rule in this action was filed in October, 1911, more than fifty-eight years after the alleged dedication and more than twenty-four years after the above mentioned attempt to open Fourth street and assert title to the premises by the plaintiff.

Under all the circumstances in this case and in view of what has been said in the foregoing discussion we are of the opinion that the plaintiff has not shown any good reason why a new trial should be granted.  The fact that a portion of Fourth street lying north of Arch street and some considerable distance away from the locus in quo was vacated by action of the borough council by virtue of an agreement entered into between the council and the owners of the land abutting on the portion of the street vacated does not in any way affect the questions here involved.  The portion of the said alleged street thus vacated was more than three blocks away from the premises involved and the action pertaining thereto is too remote to effect the status of the location here in question.  Again, this vacation was effected by mutual agreement and being an amicable arrangement, no property or legal rights of the parties were tested or determined.

Other facts appear in the opinion of the Supreme Court.

Verdict for defendant and judgment thereon.  Plaintiff appealed.

*Errors assigned* were certain portions of the charge of the court and answers to points.

*J. W. Gillespie,* with him *J. Mal. Gillespie,* for appellant.

*George B. Reimensnyder,* with him *W. H. M. Oram,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, May 26, 1915:

This is an issue framed and tried in the court below to determine the title to a small triangular piece of land in Shamokin Borough, Northumberland County. The plaintiff borough alleges that in 1853 one William L. Helfenstein, the common source of title, being the owner of a large tract of land of which the piece in dispute is a part, laid the tract out in lots and made a plan showing the lots, streets and alleys and thereby dedicated them to public use, one of which streets being eighty feet wide and crossing the piece of ground the title to which is in controversy in this issue. Subsequently the Helfenstein tract was included in the Borough of Shamokin when it was incorporated, and in 1865 the borough council passed an ordinance providing that all streets, lanes and alleys opened or laid out or drawn or marked on the plans or plots of the borough within the corporate limits were declared to be public streets, lanes and alleys. The plaintiff borough claims that by reason of the dedication of the streets and alleys by the owner of the plotted land and the subsequent action of council, it acquired the title and right of possession to the land in dispute for a public street or highway. The defendants have a paper title to the premises, and they deny that the strip of land is a plotted street or designated as such on the Helfenstein plan of lots, and aver that if it was on the plan as a street that it has never been opened to, or used by, the public and, therefore, the Act of May 9, 1889, P. L. 173, applies and determines the issue in favor of the defendants. The case was submitted to the jury who found for the defendants. The plaintiff has taken this appeal.

In an elaborate opinion denying the motion for a new trial, the learned court below clearly demonstrates the correctness of the verdict. We have reviewed the evidence in the case, and are of opinion it fails to show that the alleged street was on the Helfenstein plan and, therefore, dedicated to the use of the public as a highway, or that a street was ever opened or used by the public over the land in dispute. The court left both questions to the jury who found against the plaintiff's contention. The learned judge points out in his opinion that there are no lines, names or figures on the map or plan of lots showing that Helfenstein intended to appropriate the strip of land in question as a public highway and that no street is designated on the property in dispute by lines or otherwise. The opinion correctly says: "If there was a dedication of the locus in quo for public use it was by virtue of the action of the owner in 1853...... It has not been shown that a street or public highway was ever opened upon or over the premises involved, or that the same was ever used as a public highway." The Act of May 9, 1889, P. L. 173, provides that "any street......laid out by any person:......in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be laid out." If therefore there was a dedication of the street by Helfenstein, this act applies and the learned court should have so held as a matter of law and directed a verdict for the defendants.

Judgment affirmed.