## Coffin *v.* Old Orchard Development Corporation, Appellant.

Argued April 23, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Louis J. Goffman*, with him *Milton B. Riskin, Burton Caine*, and *Wolf, Block, Schorr and Solis-Cohen*, and *McFadden, Riskin, McCarthy and Williams*, for appellants.

*Raymond J. DeRaymond*, with him *Coffin, Grifo & DeRaymond*, for appellees.

OPINION BY MR. JUSTICE O'BRIEN, September 25, 1962:

The appellees-plaintiffs are property owners in the Old Orchard Development Corporation plan in Palmer Township, Northampton County. In early 1954, defendant began the sale of the lots in the plan, which was recorded about early May, 1954 by the defendant, Old Orchard Development Corporation, in the office for the recording of deeds in Northampton County, the recorded plan showing the lots by number and the owners at the time of recording. After placing the plan on record, the Old Orchard Development Corporation landscaped, graded and planted with ornamental shrubbery and trees, lots Nos. 44, 45, 46 and 47, the subject of controversy herein. These four lots form a block or square of approximately one acre, bounded on

the north by Heugel Street, on the east by Old Orchard Drive, on the south by Schaffer Street, and on the west by Kendon Drive. This area is referred to as the "Park". The majority of the plaintiffs herein are those who purchased property surrounding the so-called park area or lots referred to. The four lots were not offered for sale. The surrounding lots were offered and purchased by the various owners. When the surrounding property had been sold, the defendant development corporation disposed of the four lots in question for building purposes and, in fact, the property was being prepared for the erection of houses by the other defendants, when suit was instituted in April, 1960 to restrain the defendants, Mr. and Mrs. Kummer and Mr. and Mrs. Tarlowski, from proceeding with the erection of buildings on the lots and to declare the deeds from the defendant, Old Orchard Development Corporation, to the other defendants void, since the land was dedicated as a park and recreational area by a dedication to the plaintiffs and general public by Old Orchard Development Corporation.

The court in its decree nisi ordered the removal of all structures on the four lots and a return of the lots to the same condition as they were in May, 1958, including grading, seeding and shrubbing. The chancellor made findings of fact and conclusions of law, in which he held that the evidence was not sufficiently clear and convincing to establish an offer of dedication by the defendant, Old Orchard Development Corporation, and that there was therefore no dedication of the lots for park or playground purposes. The chancellor held, however, that the defendant orally represented to prospective purchasers that the adjoining real estate would always be a park or playground and that purchasers bought their lots in reliance upon these representations, whereby the seller is estopped from using the property for any other purpose than a park or for

recreation purposes. The chancellor concluded, as a matter of law, that the buyers of the adjoining land have a negative easement in the four lots, for park or recreation purposes.

Plaintiffs and defendants filed exceptions to the adjudication whereupon the court en banc entered a final decree determining the lots to have been dedicated to the public for use as a park or playground; this appeal followed.

The question presented for our determination is, has there been a dedication of the land for park or recreational purposes?

On appeal, a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury verdict, if they are supported by adequate evidence, and ordinarily will not be disturbed on appeal. In *Sendick v. Matvey*, 391 Pa. 286, 138 A. 2d 92 (1957), Mr. Justice BENJAMIN R. JONES, speaking for the Court said, at page 290: "Our scope of review in an appeal of this type was recently discussed by this Court in Commonwealth Trust Company, Admr. v. Szabo, 391 Pa. 272, 138 A. 2d 85, wherein we said: 'In passing upon the questions raised on this appeal we must adhere to the well-established rule that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal: Gagnon v. Speback, 389 Pa. 17, 20, 131 A. 2d 619; Mann v. Mann, 387 Pa. 230, 233, 127 A. 2d 666; Eways v. Reading Parking Authority, 385 Pa. 592, 601, 124 A. 2d 92; Brightbill v. Boeshore, 385 Pa. 69, 79, 122 A. 2d 38. However, the chancellor's "conclusions, whether of law or ultimate fact are no more than his reasoning from the underlying facts and are reviewable", especially "where the underlying facts themselves are not in esse but are matter of inference and deduction": Kelly v. Philadelphia, 382 Pa. 459, 465, 115 A.

2d 238; Eways v. Reading Parking Authority, supra, p. 601; Peters v. Machikas, 378 Pa. 52, 56, 105 A. 2d 708. Furthermore, a chancellor's findings of fact, even though approved by a court en banc, need not be accepted as conclusive if there is no evidence to support them or if they are based on an inference erroneously taken (Essick et al. v. Shillam et al., 347 Pa. 373, 32 A. 2d 416; Potter et al. v. Brown et al., 328 Pa. 554, 563, 195 A. 901), or where the evidence, in order to prevail, must be clear, precise and indubitable or must meet some other prescribed standard (Stafford v. Reed, 363 Pa. 405, 407, 70 A. 2d 305).' "

Dedication of land results when a landowner offers property for public use and it is accepted by or in behalf of the public and the dedication largely depends on the intention of the owner of the land. There must be an offer and an acceptance, 11 P.L.E. Dedication, §§1 and 2.

Judge ERVIN, speaking for the Superior Court, in *Vendetti Appeal,* 181 Pa. Superior Ct. 214, 124 A. 2d 448 (1956) said, at page 220: "Dedication has a partial analogy to a contract and requires a consideration of the elements of offer and acceptance. The offer of dedication may be made in a number of ways. It may be made by the express declaration of the party or by acts, deed, or plat. 16 Am. Jur. Dedication §§4, 19.[1] Dedication rests upon the intention of the owners, and the circumstances must indicate an abandonment of the property to the community. Peterson v. Marianna Borough, 310 Pa. 524, 165 A. 838; Versailles Twp. Authority v. McKeesport, 171 Pa. Superior Ct. 377, 90 A. 2d 581, Sedwick v. Blaney, 177 Pa. Superior Ct. 423, 110 A. 2d 902. No particular formality is requisite to constitute a dedication upon the part of the owner. Any

---

"[1] See also the excellent note in 53 Dickinson L. Rev. 35— Dedication in Pennsylvania."          ,

act which clearly indicates an intention to dedicate is sufficient. Waters v. Philadelphia, 208 Pa. 189, 57 A. 523."

See also 64 Dickinson L. Rev. 312 (1960).

A dedication is the devotion of land to a public use by an unequivocal act of the owner of the fee, manifesting the intention that it shall be accepted and used presently or in the future for such public purpose. 26 C.J.S. page 398. This Court said in *Peterson v. Marianna Borough*, 310 Pa. 524, 165 A. 838 (1933) at page 528: "Our Court in the case of Scott v. Donora Southern R. R. Co., 222 Pa. 634, 643, 72 A. 282, laid down this principle: 'A dedication to the public use must rest on the intention or clear assent of the owner, and must be under such circumstances as to indicate an abandonment to the use of the community.' In the case of Verona Boro. v. Allegheny Valley R. R., 152 Pa. 368, 25 A. 518, we also said: 'Where the dedication of a street is sought to be established either by the recording of a plan or by the actual use of the street by the public or by such acceptance by the public as would be binding upon the owner by estoppel, the evidence must be clear.' See also Shamokin v. Helt, 250 Pa. 80, 95 A. 385."

We have no such evidence of clear intention to dedicate the land by the defendant, Old Orchard Development Corporation. An examination of the record reveals a barrenness of evidence of an intention to dedicate, even considering as admissible and true all of the oral testimony and evidence of appellees-plaintiffs. The evidence does show that Old Orchard Development Corporation contemplated a dedication of the area and that the township supervisors told an officer of Old Orchard that if a dedication were offered, the township would be compelled to reject it. There was no dedication of the area on the recorded plan, the area being numbered lots and not designated as a park or

recreational area. This conversation between an officer of Old Orchard and a public official of the township was known to many of the purchasers of property in the area. Frequently, during the course of conversations between representatives of Old Orchard and prospective purchasers, the subject was mentioned and the four lots referred to as an open space that would provide an unimpeded view, which Old Orchard had been trying to get the township to take over and maintain as a park, but so far without success.

Other statements made by representatives of defendant corporation were: "This will always be a park;" "This is going to be a park;" "We will offer to the township, but whether it will be accepted or not, it will always be a park."

The area was landscaped and ornamentally planted and was referred to as a park by officers of Old Orchard. Some prospective purchasers of property attempted to buy some of the four lots making up the area but were told the property was not for sale and other lots were purchased instead.

The record reveals a reliance on the appearance of the land and the assumption by purchasers of property in the area that it was dedicated to the surrounding property owners and the public. However, there was not in any of the deeds a reservation or reference to dedication or easement in the four lot area. There was nothing in writing indicating a dedication or easement.

The period during which the area had the appearance of a park was from May or June of 1954 until about May, 1958, when Old Orchard removed the shrubbery from the area and discontinued the grass cutting and care of the property, and it was during this period that the majority of the plaintiffs purchased their property and during this period the property owners and the public normally used the area for recreational purposes.

Whatever the intention of Old Orchard was, or whatever its motive, there was not evidence of a clear and convincing nature which would indicate an intention to dedicate the land or to abandon the lots to the community.

Nor could there be an easement established. We said in *Clements v. Sannuti*, 356 Pa. 63, 51 A. 2d 697 (1947), at page 65: "It is the traditionally established doctrine that there can be no easement, no incorporeal right, binding the servient tenement, the effect of which would be to deprive its owner of the right of use or possession thereof. 'An easement is a liberty, privilege or advantage which one may have in the lands of another without profit . . . It may be merely negative . . . and may be created by a covenant or agreement not to use land in a certain way . . . *But it cannot be an estate or interest in the land itself, or a right to any part of it'* (Italics supplied): Slegel v. Lauer, 148 Pa. 236, 240. 'An easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special *purpose not inconsistent with a general property in the owner'*: Riefler & Sons v. The Wayne S. W. P. Co., 232 Pa. 282, 289. See also Saxton v. Mitchell, 78 Pa. 479, 483; Smith v. Dutton, 4 Phila. Reports 73, 74; Restatement, Property, Servitudes, section 450."

The evidence herein does not establish a dedication of the land to the public use, nor does it create an easement on the part of the public or the adjoining property owners. As Mr. Justice BENJAMIN R. JONES said in *Pronzato v. Guerrina*, 400 Pa. 521, 163 A. 2d 297 (1960), at page 532: "In reaching this conclusion we have given full weight to the findings of fact of the chancellor, who saw and heard the witnesses, which findings were confirmed by the court en banc. However, with respect to inferences and deductions to be drawn from such facts and with respect to the conclusions of

law, we, in line with our long established policy, have seen fit to draw our own conclusions and make our own inferences from the facts so found: Liggins Estate, 393 Pa. 500, 509, 143 A. 2d 349; Carnock v. Filer, 392 Pa. 468, 472, 141 A. 2d 195; Eways v. Reading Parking Authority, 385 Pa. 592, 601, 124 A. 2d 92." See also *Fiore v. Fiore*, 405 Pa. 303, 174 A. 2d 858 (1961).

Decree reversed, each party to bear own costs.