## Ott v. Locust Lake Village, Inc.

*Michael J. Wetmore,* for plaintiffs.

*Cletus M. Lyman* and *James C. Scanlon,* for defendant.

WILLIAMS, P. J., July 28, 1972.—This matter is before us on preliminary objections to plaintiffs' complaint in equity. Defendant owns a real estate development and sold certain lots in the development to some 1,400 individuals of which the individual plaintiff, Robert J. Ott, is one. The corporate plaintiff was formed to provide vacation facilities for its members and promote the welfare, social and recreational interest of its members.

The complaint alleges that defendant used certain representations and statements, both oral and written, including brochures, newspapers and maps, to induce

the individual plaintiff and others to purchase lots in its development; that the individuals who purchased lots believed these representations and on faith thereof purchased lots from defendant; that subsequently, the purchasers learned from the acts and conduct of defendant that the representations were untrue and were made to cheat and defraud lot purchasers.

The complaint further alleges that defendant induced individual lot owners to purchase lots by leading them to believe that certain portions of defendant's development would be set aside for recreational purposes for their unrestricted use, which was done by means of maps and brochures showing areas for beaches, camp grounds, conservation, and parking; that recorded maps differ from the maps shown purchasers in that the recorded maps do not show any areas set aside for conservation and recreation; that defendant later filed maps, approved by the Planning Commission and the Supervisors of Tobyhanna Township, wherein the development is located, which, plaintiffs aver, takes away land originally represented by defendant to lot owners as having been set aside for recreation and conservation purposes. It is averred that these maps show a violation of the township ordinance which requires five percent of a land development to be set aside for recreation and conservation since a portion of the land set aside on the recorded map is swampy and cannot be used for such purposes; that the recorded map, showing land originally set aside as a recreation field is now programmed for further development by defendant; that the original camp ground was subsequently moved to an area which is unsanitary and unusable; that the recorded map does not provide for a camp ground. The complaint alleges that about 16 acres of land which defendant represented as available for a ski area is being threatened by possible future develop-

ment into lots; that lot owners, due to pollution problems and to satisfy governmental regulations, have been required to purchase aerobic septic tanks.

The statements or representations are alleged to be "a complete community," "exclusive but not expensive," "no hidden extras," "family enjoyment for the rest of your life," and "your children cannot play in promises." These statements are alleged to have appeared in brochures and newspaper advertisements.

The complaint further alleges that: various parking lots indicated on maps are now slated to be used for lot development; Pine Lake has never been completed and is presently only a stagnant body of water; the pistol and rifle range is in reality a garbage dump.

The relief sought is:

1. That defendant be restrained

(a) From altering areas previously represented as having been reserved for camping, skiing, recreation, conservation and parking to areas designed for construction of homes;

(b) From polluting waters in Locust Lake Village;

(c) From all advertising, selling, cultivating or developing lots for the purposes of selling homes thereon, and other unlawful practices as delineated in the complaint;

2. That defendant be specifically compelled to either make the area formerly used as a camp ground, which has now been subdivided, available for use as a camp ground or alternately to furnish plaintiff with a suitable area for use as a camp ground and to specifically compel defendant to develop Pine Lake;

3. Grant $1,000,000 in money damages;

4. General relief.

Defendant has filed preliminary objections under three headings:

Heading A is a demurrer which avers that the complaint fails to state a cause of action.

Heading B is a motion to strike off complaint because it does not conform with Pennsylvania Rule of Civil Procedure 1019(f) in that it fails to state the times:

(1) That plaintiffs became lot purchasers;

(2) That alleged misrepresentations took place;

(3) That the alleged misconduct on the part of defendant took place.

Heading C is a motion for more specific complaint. This heading has 13 subparagraphs, which, for purposes of brevity, may be summarized in this manner:

(1) the caption of the complaint varies from the body thereof. The caption indicates plaintiffs bring suit in their own right. Paragraph 1 of the complaint indicates the suit is a class action; that defendant is unable to determine the identity of plaintiffs.

(2) that the complaint refers to a recreational field, camp ground, Pines Lake, a pistol and rifle range, the physical features of which do not appear on any map or brochure on the exhibits attached to complaint;

(3) that while paragraphs 4, 5 and 6 of the complaint state representations made by defendant, these statements and representations are not specified in the complaint.

(4) the same allegations as to failure to state times appear under this heading as are averred under Heading B Motion to Strike Off Complaint;

(5) the times and amounts of investments alleged in paragraph 5 of the complaint are not averred therein;

(6) the names of the officers, agents or employes of defendant and others who made the statements, misrepresentations, agreements, and who allegedly acted and conducted themselves improperly toward plaintiffs

are not identified in the complaint or their authority so to do set forth in the complaint.

## DEMURRER

Defendant asserts that the complaint does not set forth a cause of action. Since plaintiffs have sought equitable relief, we confine our opinion to the issue whether the complaint alleges a cause of action cognizant in a court of equity. The answer to this issue rests upon a determination as to whether the complaint contains allegations which, if established, would support, by clear and convincing evidence, a finding that plaintiffs have a property right in the areas of defendant's development which are the subject matter of the complaint.

It is well established that courts of equity in Pennsylvania are concerned only where property or civil rights are involved: Diamond v. Diamond, 372 Pa. 562 (1953); Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enterprises, Inc., 428 Pa. 350 (1968).

Therefore, we must examine the complaint to determine if the allegations therein contained set forth sufficient facts to establish plaintiffs have a property right in the camp ground, parks, ski areas, etc., mentioned in the complaint.

Plaintiffs do not allege that defendant has dedicated these land areas to public use. No covenant is contained in their deeds of record. It is expressly averred in the complaint that the recorded maps do not show the areas as having been set aside for public use. In fact, plaintiffs complain that the recorded maps differ from maps allegedly shown them at the time of purchase of their lots. Dedication of lands may occur by express declaration of the party or by acts, deed or plot: Vendetti Appeal, 181 Pa. Superior Ct. 214 (1956). Dedi-

cation of land to public use results when a land owner offers property to public use and it is accepted by the public. Dedication rests largely upon the intention of the owner: Coffin v. Old Orchard Development Corporation, 408 Pa. 487 (1962).

Defendant in its brief and oral argument relies heavily on the ruling in Coffin, supra, to sustain its demurrer.

In Coffin, plaintiffs were lot owners in defendant's development. The chancellor's findings of fact show that defendant had landscaped, graded and planted with ornamental shrubbery and trees, lots nos. 44, 45, 46 and 47 on its recorded plan. These lots formed a square. The central portion of the square was shrubbed by a circular area of yews, evergreens and other ornamental shrubbery. The remaining area of the square was seeded and maintained as a lawn by defendant. After landscaping said lots, defendant sold lots in the area thereof to a number of plaintiffs. The development company did not place a "for sale sign" on these lots. Plaintiffs acquired no rights to the lots by deed. These lots were used extensively as a recreation area for about six years when a sign was erected thereon bearing the legend "Private Property" "Use playground on Baldwin Drive."

The secretary and sales agent of defendant advised one of the plaintiffs before he purchased a lot that lots 44, 45, 46 and 47 would remain a park and these lots were not for sale for business purposes. The president as well as the secretary, who was also a sales agent of defendant, told another plaintiff prior to the purchase of a lot that said lots would be called a "park" and the president suggested his house should be placed so as to face the park. Another plaintiff testified prior to purchase of a lot that the corporation secretary told him "It will be a park from now on . . ." He also told him

that the view from his house would never be spoiled because they would have a park in front. The same officer made similar statements to other plaintiffs prior to lot purchases. The same officer told a plaintiff that a township official had said that the township would not accept the lots as a park but that future arrangements would be made to use the property as a park. An officer of defendant told another plaintiff "that it is a park and we are offering it to the Township—it will always be a park, you will always have that beautiful view." Defendant removed the shrubbery and trees from the lots and sold them and the buyer was about to construct houses thereon. Plaintiffs sought equitable relief. The relief sought was:

1. A mandatory injunction ordering and directing that defendants at their expense remove any structures on the lots and restore them to their prior condition including grading, seeding and shrubbery.

2. Enjoin the purchasers of the lots from proceeding with construction of buildings on the lots.

3. Damages.

4. General relief.

The chancellor ordered the removal of all structures from the lots. He further ordered the lots to be restored to their former condition. He found insufficient evidence to establish a dedication of the lands to public use. He found that defendant orally represented to prospective purchasers that the lots would always be a park or playground, and that purchasers bought their lots in reliance upon these representations and by reason of such findings concluded the seller was estopped from using the property for any other purpose than a park and recreation purposes. The chancellor concluded, as a matter of law, that the owners of the adjoining land had a negative easement in the four lots, for park and recreational purposes. On appeal, the

Supreme Court stated, "The question presented for our determination is, has there been a dedication of the land for park or recreational purpose?" In reversing the decree of the chancellor, the court said:

"Dedication of land results when a landowner offers property for public use and it is accepted by or in behalf of the public and the dedication largely depends on the intention of the owner of the land. There must be an offer and an acceptance, 11 P.L.E. Dedication, §§1 and 2.

"Judge Ervin, speaking for the Superior Court, in Vendetti Appeal, 181 Pa. Superior Ct. 214, 124 A. 2d 448 (1956) said, at page 220: 'Dedication has a partial analogy to a contract and requires a consideration of the elements of offer and acceptance. The offer of dedication may be made in a number of ways. It may be made by the express declaration of the party or by acts, deed, or plat. 16 Am.Jur. Dedication §§4, 19. Dedication rests upon the intention of the owners, and the circumstances must indicate an abandonment of the property to the community. Peterson v. Marianna Borough, 310 Pa. 524, 165 A. 838; Versailles Twp. Authority v. McKeesport, 171 Pa. Superior Ct. 377, 90 A. 2d 581, Sedwick v. Blaney, 177 Pa. Superior Ct. 423, 110 A. 2d 902. No particular formality is requisite to constitute a dedication upon the part of the owner. Any act which clearly indicates an intention to dedicate is sufficient. Waters v. Philadelphia, 208 Pa. 189, 57 A. 523.'"

In respect to the finding that plaintiffs had a negative easement in said lots, the court said:

"Whatever the intention of Old Orchard was, or whatever its motive, there was not evidence of a clear and convincing nature which would indicate an intention to dedicate the land or to abandon the lots to the community.

"Nor could there be an easement established. We

said in Clements v. Sannuti, 356 Pa. 63, 51 A. 2d 697 (1947), at page 65: 'It is the traditionally established doctrine that there can be no easement, no incorporeal right, binding the servient tenement, the effect of which would be to deprive its owner of the right of use or possession thereof. "An easement is a liberty, privilege or advantage which one may have in the lands of another without profit . . . It may be merely negative . . . and may be created by a covenant or agreement not to use land in a certain way . . . *But it cannot be an estate or interest in the land itself, or a right to any part of it"*: Slegal v. Lauer, 148 Pa. 236, 240. "An easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special *purpose not inconsistent with a general property in the owner"*: Riefler & Sons v. The Wayne S.W.P. Co., 232 Pa. 282, 289. See also Saxton v. Mitchell, 78 Pa. 479, 483; Smith v. Dutton, 4 Phila. Reports 73, 74; Restatement, Property, Servitudes, section 450.' " (Italics supplied.)

Here, we find many similarities with Coffin. The recorded maps do not show the recreation areas, camp grounds, and park area, mentioned in the complaint. There is nothing in plaintiffs' deeds which refers to such areas. The oral representations alleged in this complaint are not as strong or definite as those present in Coffin. The language of the brochures or advertising is insufficient to establish a public dedication. We are of the opinion that Coffin, supra, denies plaintiffs the relief they seek based on the allegations in the complaint. The argument that equity should, in this particular case, take jurisdiction and grant relief is best expressed by the following language in plaintiffs' brief:

"The heart of the complaint as suggested by defendant itself, is indeed misrepresentation on the part of defendant—misrepresentation of such a material na-

ture as to give rise to the equitable relief demanded in the complaint. It is these facts, which plaintiffs allege induced the purchase of lots sold by defendant, which form the basis of the equitable relief demanded in the complaint."

As we interpret this statement, plaintiffs are saying that misrepresentations alone are sufficient to warrant the relief here sought. This position is contrary to the decisions of our Supreme Court which has repeatedly required the presence of a property right before equity may grant relief. It is contrary to Coffin, supra, where the Supreme Court expressly ruled that representations of defendant development were insufficient to show a dedication of land to public use. Whether a remedy may be available to plaintiffs other than here sought is not here at issue and we express no opinion in that respect. Clearly, the complaint, in its present form, falls short of showing that plaintiffs possess a property right in the land areas in respect to which they seek relief. This being true, this court must, under the ruling in Coffin, sustain the demurrer.

## MOTION TO STRIKE COMPLAINT
## MOTION FOR MORE SPECIFIC COMPLAINT

At oral argument, defendant's counsel limited his argument as to whether the facts alleged in the complaint are sufficient to maintain a class action. The only averment in the complaint that indicates that it was brought in behalf of a class appears in Paragraph 1 thereof, which states plaintiff brings the action "for his own benefit and for the benefit of all property owners in the said Locust Lake Village. The number of property owners in Locust Lake Village is approximately 1400, and the class is so numerous as to render it inconvenient to include them all as parties to the suit."

In Penn Galvanizing Co. v. Philadelphia, 388 Pa. 370, 377, 378 (1957), the Supreme Court required a class action to so appear in its caption. It must also appear from averments in the complaint that the relief sought would benefit the class. Here, the inference to be drawn from the caption is that the action was brought by plaintiff in his own right and is, therefore, not in compliance with Penn Galvanizing Co., supra. Neither does the complaint show that the relief sought would benefit all members of the class. We do not foreclose the possibility that a class action may be proper. The lot owners may well have a common interest in fact and law in the issues before us. All we decide now is that the complaint does not so allege, is not properly captioned and does not meet the requirements of Penn Galvanizing Co., supra.

Since plaintiffs may wish to file an amended complaint, we call attention to the fact that the complaint is deficient in that it does not conform to the mandatory requirement of Pennsylvania Rule of Civil Procedure 1019(f ), that an averment of time, place and special damages shall be specifically stated in the complaint. Plaintiffs should also, in any amended complaint hereafter filed, observe the requirements of Rule 1019(h) in respect to attaching to the complaint copies of writings relied upon to sustain its case, or aver that the writings are not available, together with the reason, and set forth the substance of the writing.

Defendant further objects that plaintiffs fail to identify the officers or agents who allegedly made representations or entered into agreements with plaintiffs.

In W. A. Case and Sons Mfg. Co. v. Cerine, 105 Pa. Superior Ct. 458, 461 (1932), the court held that it is not required that the specific identity of an agent be shown so long as such agent is identified by the description of his office or his particular connection with the corporation.

Judge Woodside, in the case of DeMay v. Fellers, Inc., 59 Dauph. 336, said, page 339: "However, 'to bind a corporation on a promise of a "representative" the identity and authority of the agent should be set forth.' "

Since defendant limited its oral argument to its preliminary objections which relate to its demurrer and motion to strike because the complaint does not properly contain the averments necessary to support a class action, we will limit our order to these particular preliminary objections, but in an amended complaint plaintiffs should observe the court's comments on the preliminary objections requesting a more specific statement.

## ORDER

And now, July 28, 1972, the preliminary objection under Heading A. 1., asserting that the complaint does not set forth a cause of action, is sustained. Preliminary objection under Heading C. 1. (b), which asserts that the caption of the complaint varies from the body thereof in respect to identification of plaintiffs, is sustained.

Plaintiffs are given 20 days in which to file an amended complaint. If no amended complaint is filed within the time allowed, then judgment is to be entered for defendant upon the demurrer.