Simon, J.
In consequence of the judgment rendered in this suit by the District Court, perpetuating the plaintiff’s injunction, and ordering the proceeds of certain property described in his petition, together with the revenues arising therefrom that may be, or may hereafter come into the hands of the Sheriff, or so much thereof as may be necessary to satisfy his claim, to be first paid to the plaintiff in discharge thereof; which judgment was subsequently affirmed by this court, in March, 1841, (see 17 La. 273,) the plaintiff took a rule on the Sheriff, to show cause why he should not account for and pay over to him all the revenues and rent which came into his hands, arising from the property under seizure, in pursuauce of said judgments.
In answer to the rule the ¡Sheriff states, that he received his *135 appointment as Sheriff, in June, 1834; that, at that time, the property was hired out to one Dobbs for $225, for eleven months of the year 1834, which rent he, the Sheriff, received ; that the same property was hired out in 1835 and 1836 to one Low, for $300 per annum, out of which, he, said Sheriff, received $448, making the whole amount by him collected, $723, which, after deducting several small sums paid out for taxes, &c., left in his hands a balance of $577 86 for the rents of the said property, which, he further alleges, were received by him in the suit of the Bank of Louisiana v. Edm. Munroe, and which he paid over to the said Bank, as it was his duty to do, after the dissolution of the injunction sued out by McMicken. 10 La. 135. He further avers that, in proceeding to make the balance or remainder of the debts due to the plaintiffs, the Bank of Louisiana, by a sale of the property, he was enjoined from proceeding with the said sale, on the 21st of February, 1837, by the plaintiff in this suit; that at the time this injunction was served upon him, he had already paid over the balance to the Bank; that the rents of 1837 were expended by the lessee in repairs of the buildings ; and that the rent of 1833, and up to the date of the sale of the property under the judgment for the benefit of the plaintiff, Randall, has been held and retained by the lessee.
There was judgment below in favor of the plaintiff against the Sheriff for the sum of $577 86, the balance acknowledged to have been received by him, whilst the property was under seizure in his hands ; and from this judgment the Sheriff has appealed.
It is perfectly clear that, under the judgment above referred to, subsequently affirmed by this court, the plaintiff was entitled to demand of the Sheriff the amount of the revenues by him collected, which were, or ought to have been in his hands, at the time that the injunction sued out by plaintiff was perpetuated, including therein the revenues which the Sheriff had in his hands at the time that the plaintiff’s injunction was served upon, or made known to him in such manner as to authorize him to arrest the proceedings complained of. From that moment the Sheriff was bound, not only to abstain from proceeding to the sale of the property under seizure, but also to keep in his possession and subject to ’the order of the court, all the moneys by him collected, as *136 proceeding from the revenues of the said property. The question then presents itself: Had the plaintiff’s injunction been served upon, or made known to the Sheriff, previous to his paying over the amount claimed to the Bank of Louisiana?
It. appears from the facts stated in our decision, (17 La. 273,) that the property upon which both parties pretended to have a mortgage, and which had been seized and advertised for sale by the defendant as Sheriff, was to be sold on the 20th of February, 1837 ; and it was for the purpose of arresting said sale, as well as to prevent the paying over of the revenues to the Bank, that the injunction was obtained and sued out. It is true, the record does not show at what time the injunction was issued; (the writ as found in the record bears no date ;) and it does not appear that it ever was served upon the Sheriff, except from his return, dated 24th February,' 1837, which states, that u further proceedings on this writ are stayed by injunction,” referring to an order of the District Court thereto attached. But it is equally true, that the Sheriff intended, and was to sell the property on the 20th day of February, 1837; and that it was his duty to execute his writ on that day, unless prevented by an injunction issued by the court which granted the original order of seizure and sale. The property seized xoas not sold on the 20th of February, as advertised ; the injunction obtained by the plaintiff. Randall, had its effect; and the necessary inference from this fact is, that the sale did not take place, because the Sheriff had either been previously served with the writ of injunction, or had been informed of its having been sued out, in such manner as to consider himself sufficiently authorized to suspend the proceedings. The Sheriff was bound to obey the order of the court in extenso, from the moment that he was made aware of its existence; and he had no right to obey a part of it, and disregard that part which related to his not parting with the moneys he had then in his hands, proceeding from the collection of the revenues of the property seized. We must, therefore, consider that on, or previously to the 20th of February, 1837, the Sheriff had received sufficient notice of the injunction and was bound to obfey it.
Now, it appears from the receipt of the cashier of the Bank of Louisiana, filed with the Sheriff’s return, that the amount m dis *137 pute was paid over to him by the Sheriff, on the 21st of February, 1837. This is the date of the receipt, which includes not only the sum of $577 86, paid by the defendant, but also that of $312 50, received of M. Courtney, the defendant’s predecessor in office; and which latter amount also proceeded from the revenues of the property, previously collected by the former Sheriff.
From the above facts and circumstances it is manifest, that the payment made by the defendant on the 21st of February, was made contrary to and in disobedience of the same injunction, to a part of which he had conformed the day before ; and we agree with the Judge, a quo, in the opinion, that such payment was by him made at his peril, and that he is bound to pay to the plaintiff in the injunction the sum of money which he, the Sheriff, had in his hands, at the time that it was issued, and which he had been enjoined to keep until the further order of the court.
As to the sum of $312 50, which the appellee prays in his answer may be awarded to him, in addition to the amount which was allowed him in the court below, we think he is not entitled to it. This sum had remained in the hands of Courtney, the defendant’s predecessor in office, until the 21st of February, 1837, when it was paid over by him to the Bank of Louisiana. Nothing shows that this amount ever came into the hands of the appellant, who cannot be made responsible for the acts of his predecessor, and who was not bound to instruct him how to act. The receipt is given for said amount, as received of M. Courtney, late ¡Sheriff; and if it was paid over to the Bank through the hands of the appellant, it was necessary to have proved it on the trial; we cannot presume it. Every Sheriff stands responsible for his own individual acts. He has nothing to ask of his predecessor, unless ordered to do so by the court, or in the cases, provided for by law.

Judgment affirmed.