*36 Vroom.* State v. Duryee.

---

THE STATE OF NEW JERSEY v. EDWARD H. DURYEE AND HOWARD W. HAYES, EXECUTORS OF GEORGE S. DURYEE, DECEASED.

Argued June 5, 1900—Decided November 12, 1900.

1. By an act approved February 12th, 1891, the legislature established a department of banking and insurance and provided for the appointment of a commissioner thereof, to hold office for the term of three years, and by the third section of the act fixed his compensation at an annual salary of $4,000.

2. All the duties previously performed by the secretary of state were conferred by the act upon the said commissioner, and he was authorized to charge for all services performed by him the same fees as were then fixed by law for like services in the department of state, and was required to make quarterly returns to the comptroller of all fees and moneys collected by him *and pay the sum so collected into the state treasury.*

3. Among the duties imposed by law upon the department of state at the date of the creation of the department of banking and insurance, was that of annually computing the value of life assurance policies and annuity bonds of life assurance companies organized under the laws of this state.

4. By section 2 of an act approved March 17th, 1892, provision was made for the valuation of such policies and annuity bonds of domestic life insurance companies and providing that each company should pay to the commissioner, to defray the expenses thereof, the sum of one cent for every $1,000 of insurance and annuity bonds so valued.

5. The contention is that the fees received under this act need not be accounted for by the commissioner in his quarterly return to the comptroller under the act of February 12th, 1891, nor was he required to pay the fees so collected into the state treasury.

6. This contention is not well founded, the act of February 12th, 1891, fixed the compensation of the commissioner at $4,000 for all services rendered by him and authorized with the approval of the governor, the employment of necessary clerks or employes to be paid in the same manner as the commissioner. There is nothing in the act of March 17th, 1892, either expressly or by implication, to justify the neglect to report and pay over the moneys collected under it to the state.

7. In all cases where a statute authorizes a public official, whose compensation is a fixed salary, to collect for the public the fees payable by law for services rendered, it should be held to be the legislative intent, when a subsequent act authorizes him to collect or receive as such public official other or additional fees, that he is to receive the same in trust for the public, unless the subsequent act shall expressly state that such fees may be retained by him for his own use *in addition* to his compensation as fixed by law.

---

Case heard on agreed facts at the bar of the court, a jury being waived. The following are the agreed facts:

"It is agreed between counsel that the foregoing case shall be argued before the bar of the Supreme Court on the pleadings and the following facts:

"George S. Duryee, the defendants' testator, was commissioned as commissioner of banking and insurance on June 23d, 1891, to fill a vacancy. He was reappointed and commissioned on February 9th, 1892, for the term ending February 9th, 1895, and was reappointed and commissioned on February 19th, 1895, for the term ending February 19th, 1898. He died October 27th, 1896, and the defendants are his executors, duly qualified.

"The said George S. Duryee, as commissioner of banking and insurance as aforesaid, received and collected in the year 1893 the sum of $3,999.11 as fees for valuing the policies and annuity bonds of life insurance companies of this state

as of December 31st, 1892, as required by chapter 80 of the laws of 1892, and paid out for services of the experts whom he employed to make such valuations, and who made them, the sum of $1,555.24, retaining the balance, being the sum of $2,445.87, for his own use. He received and collected in the year 1894 the sum of $4,420 as fees for valuing the policies and annuity bonds of life insurance companies of this state as of December 31st, 1893, as required by chapter 80 of the laws of 1892, and paid out for services of the experts whom he employed to make such valuations, and who made them, the sum of $1,672.69, retaining the balance, being the sum of $2,747.31, to his own use. He received and collected in the year 1895 the sum of $5,046.98, as fees for valuing the policies and annuity bonds of life insurance companies of this state, as of December 31st, 1894, as required by chapter 80 of the laws of 1892, and paid out for the services of the experts whom he employed to make such valuations, and who made them, the sum of $1,766.42, retaining the balance, being the sum of $3,280.56, to his own use. He received and collected in the year 1896 the sum of $5,385.70 as fees for valuing the policies and annuity bonds of life insurance companies of this state, as of December 31st, 1895, as required by chapter 80 of the laws of 1892, and paid out for the services of the experts whom he employed to make such valuations, and who made them, the sum of $1,963.29, retaining the balance, being the sum of $3,422.41, to his own use. The schedule annexed to the plaintiff's declaration correctly sets out the amount so received and paid out, and the companies whose policies and annuity bonds were so valued. The defendant sought a construction of the legislation on the subject from the attorney-general, and received from him an opinion, a copy of which is hereto annexed.

"The competency and relevancy of this opinion is not admitted by the state, but on the contrary is denied, the only fact admitted by the attorney-general being that it was obtained as above stated.

"The assistance of expert mathematicians was necessary

for said valuations of such policies and annuity bonds, and such valuations could not be done by the commissioner of banking and insurance, nor the deputy commissioner of banking and insurance, nor any of the other persons authorized by law to be employed by the said commissioner, and the said commissioner was not authorized by the governor, as provided by chapter 6 of the laws of 1891, to employ the experts necessary to make such valuations.

"In the cases where it appears from the schedule annexed to the declaration that the fees received were not sufficient to pay the costs of valuation, the deficiencies were paid by the commissioner out of his personal funds."

Before DEPUE, CHIEF JUSTICE, and Justices GUMMERE, LUDLOW and FORT.

For the plaintiff, *Samuel H. Grey,* attorney-general.

For the defendants, *Hays & Lambert.*

The opinion of the court was delivered by

FORT, J. By an act of the legislature approved February 12th, 1891 (*Pamph. L., p.* 17), the legislature created a department of banking and insurance, and by the first section of said act it was provided as follows:

"There is hereby established a department of banking and insurance, charged with the execution of all laws in force or which may be enacted hereafter, relative to insurance, banking, savings, trust, guarantee, safe deposit, indemnity, mortgage, investment and loan corporations."

The executive officer of the department was to be known as commissioner of banking and insurance. He was to be appointed by the governor and hold office for the term of three years, and the term of the first appointee began with the 1st day of April, 1891.

By the third section of said act, which is the section of importance in the determination of this case, it was provided as follows:

"The said commissioner shall receive an annual salary of $4,000, to be paid monthly by the state treasurer, on the warrant of the comptroller; for all services performed by him he shall charge the same fees as are now fixed by law for like services in the department of state, and shall make quarterly returns to the comptroller *of all fees and moneys collected by him and pay the sum so collected into the state treasury;* he shall employ from time to time such clerks, agents and employes as may be necessary for the proper discharge of his duties; their compensation shall be fixed by the governor and be paid in the same manner as that of the commissioner; *provided,* that the entire sum paid for salaries annually in this department shall not exceed the amount of fees collected by the commissioner and paid into the state treasury."

Prior to the enactment of the law of February 10th, 1891, the duties of that act placed upon the department of banking and insurance were performed by the secretary of state, under the several acts of the legislature of this state, previously enacted, which had relation to this usbject. All these powers and duties previously existing in the secretary of state were transferred to the new department, created under the act of 1891, and in the language following: "This department shall be vested with all the powers and charged with all the duties and subject to all the obligations and penalties now vested in, conferred and imposed upon the secretary of state, acting as commissioner of insurance, or upon the board of bank commissioners or any other officer or board charged with the execution of the laws relative to the subjects recited in the first section of this act, as also building and loan corporations or associations organized under the laws of other states, transacting or to be admitted to transact business in this state."

Among the duties imposed by law upon the secretary of state, prior to the creation of the department of banking and insurance above referred to, was that of annually computing the value of life insurance policies and annuity bonds of the life insurance companies organized under the laws of this

state, according to the American Experience Tables of Mortality, and interest at the rate of four and a half per cent. or according to some other recognized standard of valuation. *Pamph. L.* 1872, *p.* 8, § 1; *Id., p.* 30, § 1.

. Subsequently to the creating of the department of banking and insurance by an act approved March 17th, 1892, which was a supplement to the General Insurance law, it was provided by section 1 thereof that the expenses of examining the affairs of any insurance company under the provisions of the General Insurance act should be paid to the commissioner of banking and insurance by the company so examined. By the second section of said act provision was made for the valuation of policies and annuity bonds of all domestic life insurance companies, and to cover the expense thereof it was provided as follows:

"Upon such valuation being made and a certificate thereof furnished by said commissioner, each company shall pay to such officer, to defray the expense thereof, the sum of one cent for every thousand dollars of the whole amount insured by its policies so valued, and the gross amount of its annuity bonds so valued." *Pamph. L.* 1892, *p.* 145, § 2.

The agreed facts set out at the head of this opinion state that George S. Duryee, the testator of the defendants in this case, was commissioned as commissioner of banking and insurance on the 23d of June, 1891, and reappointed and commissioned in February, 1892, for three years, and that he was again reappointed and commissioned on February 19th, 1895, for an additional term of three years, but that he died on the 27th of October, 1896, before the completion of his second term.

To the declaration in this case there is attached a bill of particulars which is not disputed by the defendants and which shows that the testator of the defendants received in his lifetime, and in his office as commissioner of banking and insurance, the sum of $11,899.09, in excess of expenses incurred by him, in the valuation of said policies and annuity bonds pursuant to statute.

There is but one question in this case and that is whether

under the act of March 17th, 1892, the banking and insurance commissioner has a right to receive the fees paid for the valuation of the policies and annuity bonds of domestic companies to his own use, or whether he receives them as other fees are paid to him in the insurance department, to be accounted for in his quarterly returns to the comptroller of the state and paid into the state treasury, as required by the third section of the act approved February 10th, 1891, above cited.

The contention of the defendants is (1) that the moneys paid by domestic life insurance companies to the commissioner, under the second section of March 17th, 1892, are not included within the fees for which he is required to account under the third section of the act of February 10th, 1891, but that the same are to be paid by the companies under the act of March 17th, 1892, to the commissioner, to cover his services in the valuation of their policies and annuity bonds and his expenses for expert and other aid incident thereto, and (2) that the act of March 17th, 1892, having been passed subsequently to the act of February 10th, 1891, creating the department of banking and insurance and directing that all fees shall be turned into the state treasury, is not applicable to the one cent per thousand required to be paid by domestic life insurance companies to the insurance commissioner for the valuation of their policies and annuity bonds.

The contention is that the last act, having been passed after the act creating the department, should be construed as an expression of legislative intent to authorize the banking commissioner to receive those fees to himself, because by the terms of the act of March 17th, 1892, it is expressly provided that the one cent per thousand for valuation of policies and annuities shall be paid "by each company to such officer to defray the expenses thereof."

The construction here contended for would make it necessary to hold that when it is the intent of the legislature to require an officer of the state, whose compensation is fixed by an annual salary in lieu of all fees, to account for and pay

over fees which he may be authorized to collect or receive by
a subsequent statute, to state in the statute that such was its
intent, and if no such statement is made in express language,
that then all the fees subsequently provided to be paid to
such officer in his office would go to the officer in person.
Such a construction should not be made unless it is abso-
lutely impossible to reconcile legislative intent with any
other theory. It needs to be considered in determining this
question what the statutes of this state show is the evident
intent of the legislature with regard to state officials who
have of late been placed upon a salaried basis but who were
formerly upon a fee compensation. The policy of the state
not only in the insurance department, but as to its judiciary
and the secretary of state, and the clerks of all the courts,
and of all the departments of the state government, and as
to many county officials, as gathered from the legislation of
the past few years, is to place all public officials upon fixed
salaries by way of compensation and to provide that all fees
collected by such officers shall be turned into the state or
county treasury. It would be difficult to find words to more
clearly express the intention of the legislature to require that
all fees collected by the new department of banking and
insurance created by the act of 1891 should be turned into
the state treasury, than the words employed in this statute.
The first section of the act of 1891 clearly declares that the
commissioner is charged with the execution of all laws now
in force "or which may be enacted hereafter," and the third
section of the act expressly says that the commissioner shall
make return and pay into the treasury "all fees and moneys
collected by him." It is made his duty, by the act creating
the department, to collect the fees on the basis, as the
statute says, "now fixed by law" for like service in the de-
partment of state. He would be equally chargeable under
the clause in the first section of the act of 1891, which
enjoins upon him the execution of all laws which may be
subsequently enacted for the collection of fees due to or
collectible by his department, and it would be equally obli-
gatory upon him to turn such latter class of fees into the state

treasury. By the Mechanics' Lien law, as revised in 1898, it is expressly provided that the justices of the Supreme Court shall be entitled to receive certain fees for amending lien claims and making the several orders provided by that statute to be done and performed in the execution of that act. This provision as to the justices of the Supreme Court is some years subsequent to that which places said justices upon a fixed annual salary by way of full compensation and directing that all fees and emoluments received by them should be paid into the state treasury. It could be held with equal propriety, if the construction here contended for by the defendants were sustained, that the fees thus payable under the Mechanics' Lien law should be paid to and received by the justices personally, as that the banking commissioner should receive to his own use the fees mentioned in the second section of the act of 1892.

It should rather be stated as the proper rule of construction of such statutes as this, that where a public officer is upon a fixed salary and the fees which he is entitled to collect or receive are directed to be paid into the state or other public treasury, that it will be held to be the legislative intent in all cases, where other or additional fees are directed or authorized to be collected or received by him, that such fees are to be received by him in trust to pay over to the proper authority, unless in apt and express words the legislature shall state in the act that such fees may be retained by him for his own use in addition to his compensation as now fixed by law.

We are unable to find any support for the position taken by the defendants in this case and the failure to turn over the fees received by the testator of the defendants as stated in the agreed facts was without warrant of law, and the state may have judgment for the amount shown by the agreed facts to be due, with a proper calculation of interest to the date of the entry thereof.