INDUSTRIAL HOMESTEAD ASS'N.

 vs. No. 7402.

CHARLES A. JUNKER & al,
 APPELLANT.

February 13th, 1919.

CHARLES F. CLAIBORNE, JUDGE.

In this case an owner sues a contractor for the return of money he paid ~~to him~~ on a building contract.

The petition alleges that Charles A. Junker transferred to the plaintiff a certain lot of ground in order to make the plaintiff the record owner of it so as to let out a building contract and erect for account of said Junker a building which was thereafter to be retransferred to him in accordance with the Homestead plan; that in pursuance of said agreement, the plaintiff, on July 9th, 1915, made a contract with Frederick Junker, builder, for the erection of a two story frame residence for which the said plaintiff was to pay $2300 represented by five installments or payments of $460 each; that the Southwestern Insurance Company signed as surety for Frederick Junker; that after the plaintiff had made two payments of $460 each to Frederick Junker, the building was practically destroyed and Frederick Junker abandoned the work and announced his intention not to reconstruct said building; wherefore the plaintiff prayed for judgment against Charles A. Junker, Frederick Junker, and the Insurance Company for $920.

Charles Junker filed an exception of no cause of action which was maintained, and the suit was dismissed as to him.

Frederick W. Junker and the Surety Company admitted the building contract; they averred that work under the contract had been commenced, and a first payment had been earned, when a storm of unprecedented violence visited the City and entirely demolished the work which had been done; that the work was recommenced and had been executed up to a point at which the second payment was due, when, for the second time, the City was visited

by a terrific storm of greater violence than the first, and again the work which had been done was entirely demolished; that the City Architect then notified Frederick Junker that the plans of the building were defective and that he would not permit the erection of the building in accordance therewith, that the double destruction of the work was due to the violence of the two storms and to the defect's in the plans and in no way to the fault of the contractor; that the plans were furnished by the plaintiff Association and were approved by its expert appointed by the Association for that purpose; that Junker was not an architect and that it was no part of his duty to pass upon the plans of the building; that more than $920 were expend-ed by Junker on the work which was actually done on the building, and that liens in excess of that amount have been filed against the building.

There was judgment for the plaintiff as prayed for against Fred Junker and the Insurance Company and they have appealed.

As we understand the plaintiff's case he pitches his cause of action upon two propositions: first, that the building was blown down before Junker completed and delivered it to the plaintiff, and that the destruction of it was his loss; and second, that he abandoned the work.

The abandonment of the work by the contractor Junker did not obligate him to return the money which he had received from the owner in payment of the first and second installments which he had earned; it only gave the owner the right to complete the building at the expense of the contractor and of his surety.

Article C. C., 2769 (2740) says:

"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract". 12Ct. App., 126; 3 La., 1; 4 La., 465; 7 La., 134;

4 A., 97; 6 A., 202; 9 A., 31; 15 A., 220; 124;

36 A., 555 (558); 50 A., 351; 49 A., 863; 124 La.,

306; 15 Am. & Eng. Enc. Law p 1093 · 10; 99 Pac., 723;

9 C. J. 739 .78 - id 818 155 - id 820 157.

The last clause of the building contract itself contains provisions and gives the owner rights exactly in accordance with the authorities hereinabove quoted.

But in the present case there were two reasons which justified the contractor in refusing to rebuild. The first one was that the destruction of the building put an end to the contract both as to him and as to the owner, according to the English and to the common law. 113 Pac., 121; 46 N. E., 449 (451); 2 Law Rep. Common Pleas 651 (659); 8 Elliott on Contracts 3702; 1 Am. An. Cas. 466 - id 1913 A. p 458, 459.

The other reason that the plans had been condemned by the City Engineer who had refused to give a permit for the construction of a house in accordance therewith.

In Shepard vs Hero, No. 6830 of this Court we said:

"Where a contractor is required by the owner to erect a part of a building contrary to correct principles of architecture and in violation of the building laws of the City, he is justified in refusing and quitting, and is entitled to the commission he would have earned had he been allowed to do the work in a proper manner." 9 C. J., 804 143 - id 821 158 - id 805 - id 822 159; 41 A., 375.

It seems that the contractor Junker did get a permit to erect the building, when he first started. He had got as far as his third payment and was about to lath and plaster, when, on August 7th, the building was blown down; he then demolished it, and proceeded to reconstruct it as before; he had finished the plastering and had the locks on the doors and was within ten days of finishing the building, when on September 29th it was again blown down by a storm; he took it apart again; but this time the City authorities refused "the issuance of the necessary building permit for the erection of said structure in accordance with the plans and specifications submitted" "be-

cause", in the opinion of the City Engineer, "the building was not properly braced and anchored to the footings."

The other ground of action of the plaintiff is that the building was blown down before Junker completed and delivered it, and that the destruction of it was his loss.

The law upon the subject is contained in the following articles of the Civil Code.

Art. 2758 (2729):

"When the undertaker furnsihers the materials for the work, if the work be destroyed, in whatever manner it may happen, previous to its being delivered to the owner, the lossshall be sustained by the undertaker, unless the proprietor be in default for not receiving it, though duly notified to do so". C.N.1788.

We interpret this article as applying exclusively to *per aversionem, in bulk,* building contracts which provide for payment after the completion and delivery of the entire work to the owner. But when the building contract provides for the acceptance, delivery, and payment of the work in installments as the work progresses, as in this case, the law is different and is governed by the following ~~code:~~ *article /*

Art. 2761 (2732):

"If the work is composed of detached pieces, or made at the rate of so much a measure, the parts may be delivered separately; and that delivery shall be presumed to have taken place, if the proprietor has paid to the undertaker the price due for the parts of the work which have already been completed". C. N. 1791.

In this case two parts had been completed and delivered and paid for, for it is the payment of those two parts which the plaintiff seeks to recover.

The reason of the difference of the two articles is obvious, whether we consider the building contract as one of lease or of sale. When the contractor completes a part of a building, it is his work, his property, because he has paid for

83

it in labor and materials; if it be destroyed it is his loss,
in accordance with Art. C. C. 2758, and the principle "res perit
domino"; but when he delivers that part to the owner, and re-
ceives payment for it from the owner, the ownership of it is
transferred from the contractor to the owner who is seized of
the ownership, because he has paid for it; it is in the nature
of a sale. 30 Dalloz Rep. Leg. p 556 88; if it perishes while
it belongs to the contractor, the loss is his; if it be des-
troyed after the ownership has passed to the owner, the loss
is the latter's.

Such is the common interpretation put upon the law
by buildings contracts, and by the plaintiff and the contractor
in this case. Their building contract provides:

> "It is well understood and agreed between the
> parties that the party of the second part (the con-
> tractor) shall insure the said building at his own
> expense, in a solvent insurance company or companies
> satisfactory to the party of the first part (the
> owner), and that whenever any payment is made to the
> builder by said owner, he shall transfer to the owner
> an amount of said insurance corresponding with the
> amount of the payment thus made, to indemnify the
> owner for any loss in the event of fire, before the
> final delivery of said building".

We have not been referred to any decisions of our
Courts interpreting this article, nor have we found any. But
we have adopted, what we believe to be, the interpretation of
the French commentators. 10 Dalloz Rep. Leg. Supp. p 261 74;
75 . 76; 4 Duvergier p 396 - 344; 3 Pothier Louage 436.
*Lacantinerie*

In 19 Baudry.- Lacantinerie p 744 - 2908 we read:

> "The will of the parties may put the thing at
> the risk of the owner, even before the completion
> of the building. It happens, indeed, that buildings
> partially completed are accepted by the owner as
> regards the work already done; it happens even that
> the owner accepts the work gradually as it progresses.

In that case, the parts accepted become the property of the owner and are at his risk". Also 2 Guillonard p 351 ¶ 784; 2 Trop Louage 990; 1 Domat p 218 ¶ 8.

"By acceptance and delivery, the owner has appropriated the work, and consequently all fortuitous events must, henceforth, be at his risk". 3 Delvincourt p 215 (4).

Digest Bk. 19, title 2, law 36:

"When a work has been let out in bulk, until it has been accepted, it is at the risk of the contractor; but if it has been given out by the foot or by measure, it is at the risk of the contractor as long as the work has not been measured &c

The common Law is the same. We quote from 2 Parsons on Contracts 517:

"If the part to be performed by one party consists of several distinct and separate items and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable; and the same rule holds where the price to be paid is clearly and distinctly apportioned to different parts of what is to be performed although the latter is in its nature single and entire".

In Siegel vs Eaton & Prince Co., 46 N. E. (Ill.) 449 the syllabus thus states the case:

"A contractor agreed to construct an elevator for a certain price payable one half when engine is on foundation and final payment to be due when the elevator is put in good running order." Held, that as to payments the contract was severable , so that on the accidental destruction of the building by fire before completion of the elevator, but after the erection of the engine, the contractor was entitled to one half of the price". Quoting Appleby vs Myers, 2 Law Rep Common Pleas p 651. In the Seigel case the work

85

had not even been accepted, nor was there any statute governing the rights of the parties.

175 S. W. (Ky), 347 (349):

"It seems to be well settled that where a contractor undertakes to build a house and turn it over complete to the owner before receiving any compensation, and the house is destroyed before its completion without fault of either party, there can be no recovery by the contractor, for he has not performed the condition precedent to his right of compensation. But the contractor in this case, as modified by the October correspondence, brings it within a well-known exception to that general rule, and that is that where under the terms of a contract the work is severable, and the contract price is payable in installments, as a certain portion of the work is finished, and the building is destroyed after an installment has been completed, then there may be a recovery by the contractor for such installment. Elliott on Contracts, vol. 3, 1909 in discussing the question where the loss shall fall when there is an accidental destruction of a building in process of construction, says:

'If the installments are to become due and 'payable absolutely on the performance of a cer-'tain proportion or part of the work each of such 'installments is due and payable when such part or 'proportion specified is completed, and the subse-'quent accidental destruction of the structure 'does not relieve the owner from his obligation to 'pay such installments'.

In Ann. Cas. 1913 A p 458, there is an extended note dealing with the various phases of this question, wherein, among other things, it is said:

'Where, however, the contract is divisible and 'severable, where the price is not entire for a 'completed building, but is payable by installments, 'these installments being fixed with regard to the 'value of the work done or as certain portions of the 'same are finished - if the structure is destroyed 'by inevitable accident, the builder is entitled to 'recover for the installments which have been fully 'earned'.

And to this note is appended a long list of authorities supporting that view".

See also 165 Pa. St. 605 - 59 Am. St. Rep. 280.

"Where the contract is not entire and the work is
destroyed when partly completed, the builder has been
held entitled to recover the installments due at the
time of the destruction of the work, or the pro-rate
value of the materials and work, as the evidence should
show the contract to be, and it has also been held
that he is not required to rebuild the structure".
9 C. J. 807§ 145 - Authorities.

We can add to the force of these authorities that ac-
cording to them and to Article 2758, the destruction of build-
ings before completion and delivery is the loss of the contrac-
tor only in those cases where the destruction was not caused by
the fault of the owner. Of course, when the destruction is the
result of the fault of the owner, the loss is his, because he
cannot take advantage of his own wrong, and because of Article
C.C. 2315 which provides that every act of man that causes dam-
age to another obligas him by whose fault it happened to repair
it. In this case we have found that the building collapsed ow-
ing to the fault of the owner; therefore, he was bound to pay
the contractor the value of his work, and he cannot recover any
payment already made.

There is a clause in the building contract which reads
as follows:

"It being understood that no payment made in the man-
ner hereinabove set forth, shall be considered as an
acceptance of the work performed up to the time of such
payment, or as a waiver of any of the legal rights of
the owner."

We do not understand this clause as varying in any particular
the situation of the parties resulting from the delivery and
payment of the several installments, - it is only a reservation
of a right to take advantage of any defective execution of the
contract which might subsequently be discovered. /

But the plaintiff argues that the defendant's case is
also governed by Article 2762 (2733) of the Civil Code which
reads as follows:

"If a building which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks". C. N. 1792.

Plaintiff's contention is, however, that although the building collapsed on account of defective construction the defendant is liable, even although the defective construction resulted from following defective plans and specifications. Such is not the law. The law is that the contractor is liable for errors of construction resulting from following the plans and specifications furnished by the owner only when such errors are apparent and easily detected and such as should have been discovered by the exercise of ordinary care and skill. 47 A., 1064; 115 La., 424 (431); 222 Fed. Rep. 737; 11 A., 427; 10 Dalloz Rep. Leg. Sup. p 269 114.

Baudry - Laeautuierie in vol. 19 p 753 2930 says:

"If the undertaker is under the orders of an architect, the vices of the plan do not entail any responsibility upon the contractor; the architect alone must impute to him self the defects which, by reason of these vices, have been carried into the construction; the undertaker cannot be declared liable for having followed the indications of a plan which imposed itself upon him. Nevertheless, the contrary has been decided in the case where the undertaker has perceived the fault committed in the plan, and where the fault would be so gross that an experienced undertaker should have refused to execute the work".

Also 2 Guillonard No. 855; 30 Dalloz Rep. Leg. Vo. Louage d'ouvrage p 575; 4 Dalloz Codes p 495 No. 123, 126; 26 Laurent p 46 42; 1 Soudrat p 679 673.

It cannot be said that the defects in this plan were ap-

parent or of easy discovery, when the plans were drawn by an architect, were examined and approved by a practical builder employed as expert by the plaintiff, and after the expert had examined the work done in accordance with the plan and had approved it. It would be manifestly unjust to saddle upon the contractor errors in the plan which were ascertained and pointed out only after the building erected under such plan had failed to stand the test of two storms, and for which the plaintiff and his expert were as much at fault, if fault there was, as the contractor.

The common law is in accord with the Civil law.

In 9 C. J. p 742 we read:

"We understand it to be well settled that by the making of such contract as the one involved in this case the owner impliedly warrants the sufficiency for the purpose in view of plans and speicfications which the contractor is required to follow and subjects himself to liability to the contractor for loss or damage entailed upon the latter in consequence of a fatal deficiency or fault in the plans and specifications not discoverable by him by the exercise of ordinary diligence upon inspection".

9 C. J. 752 87:

"Where the builder performs his work strictly in conformity with plans and specifications, he is not liable for defects in the work that are due to faulty structural requirements contained in such plans and specifications, particularly where the errors in the plans are not apparent or easily detected and he may recover under the contract, unless he has warranted that the plans and specifications are correct or guaranteed the result, nor is he under any responsibility in the event of the subsequent destruction of the completed work, whether that destruction is caused by its own inherent weakness or from extraneous causes". See 144 Fed. Rep. 942; 144 Fed. Rep. ⁻⁻⁻, 144 Fy. 614; 160 N. Y.,72;6 Cyc, 63.

But the plaintiff argues that it is not bound by the plans and specifications for two reasons: The first one is that it did not furnish them. The facts are that they were prepared by an architect at the request of Charles Junker; that he submitted them to Frederick Junker for an estimate; that Frederick Junker made an estimate; that then Charles Junker made his application to the plaintiff Homestead; that the plaintiff's expert examined them and made a favorabel report upon them; whereupon the plaintiff made a contract with Frederick Junker whereby he was to erect a building in conformity with the same plans and specifications. We entertain no doubt that the Homestead, by the above course, adopted and made its own the plans and specifications; *they were certainly not those of Fred Junker*

The second reason is that the specifications contain the following dlauses: p 3:

"The whole frame must be built and braced in corners and whereever necessary". p 10:"Anything not specified in plans, or vice versa, or anything which is of actual necessity to complete the work intended must be furnished and done by the contractor as though both specified and shown without extra charge".

There is no allegation and no evidence that the contractor did not build and brace the whole frame in the corners and wherever necessary, nor that he did not furnish not do anything specified on the plan. If the complaint is that he did not brace the building sufficiently to withstand two storms, the answer is, that he did not enter into that contract; he bound himself to put in such braces as were called for by the contract, and wherever he, and perhaps the expert of the plaintiff, might think necessary. But he did not undertake to put braces and do such other work as might guarantee the building against storms.

It is therefore ordered that the judgment herein be reversed and set aside, and that there now be judgment in favor of the defendants, rejecting plaintiff's demand at its cost in both courts.

February 13th, 1919.