CHAS. J. BABST, JR.

 VS. No. 7548.

SOLOMON PERITZ AND

JOSEPH YOCHIM.

May 15th, 1919.

CHARLES F. CLAIBORNE, JUDGE.

The plaintiff sues to recover the price of cement and other work done by him.

The cement work is based upon the following proposal:

"New Orleans, La., July 26th, 1917.

Mr. Yochim.

Dear Sir,

I propose to do the cement paving at Robert and Liberty Strs. as it was shown to me by Mr. Petty as follows: Main entrance is to be made in small stones and colored red with Mosten Builder Hardner - concrete is to be gravel with 1-3-5 mixture - top is to be 1-1½ cement - for the sum and price of $160.00 One Hundred and sixty dollars - the above work is to be done in the best workmanlike manner- Trusting that this estimate will meet with your approval, I am

"Signed" Chas. J. Babst, Jr.,

1818 St. Andrew - "

The plaintiff alleged that subsequent to the above contract he made verbal contracts with the defendants

1o for paving one room for ten dollars;

2o for paving the sidewalk for $2.50;

3o for cementing the foundations and pillars for $7.50; and

4o for the sale of 3000 feet of flooring @ $11 per M; that he performed his contract and that defendants have refused to pay him; he prayed for judgment for $213 with privilege upon the building.

This suit was filed November 15th, 1917.

425

The defendants answered admitting the contract for $160.00 and the four other contracts amounting together to $53.00, but denied that plaintiff had performed his contracts wither written or verbal; they admitted that they had not paid the price; they averred that plaintiff had agreed to do the $160 cement pavement "with concrete composed of one part gravel, three parts cement, and five parts sand; the same to be well mixed, put down four inches thick, composed of one part of cement to one and one and one half parts of sand; . . . that the concrete used in the pavement above described and in the top above described is not composed of the parts above described of the materials used therein; that the cement used is insufficient in amount and insufficient in quality, forming a mass of insufficient strength, which is now disintegrating and has been disintegrating from the time plaintiff claimed his work was complete; that the work done by plaintiff is not done in a workmanlike manner, and that the whole contract is not such as these defendants can be called upon to accept and pay for"; they make practically the same allegations concerning the oral contracts for cement work; they make no allegations concerning the contract for the sale of the flooring.

The case was tried and judgment was rendered on December 12th, 1918 in favor of plaintiff for Thirty-three dollars, presumably for the price of the flooring.

After a motion for a new trial had been denied to the plaintiff he appealed.

The plaintiff testified that he was asked to do the job immediately; that he did it in a first class manner; that the materials and mixture are the best to be had; that he worked until half past six at night to complete the job; that the next morning at 7o'clock he found defendants' carpenters on the work he had finished the evening before, and he had to order them off; the job is perfect and has not a crack or a break; it is down for 25 years; the pavement is red with a blue border; the only objection of Mr. Peritz was concerning stains on the cement caused by his oiling the floor; every kind of work was being done there at the time, carpenters and others; there were 25 or 35 men at ork; Mr. Peritz' superintendent was overlooking

their work.

A. T. Petty was in charge of all the work going on, including the cement work, representing the owners - Yochim and Peritz -; the pavement was put ~~done~~ *down* according to the general rule of paving as to all buildings he had been working on, about four or five inches concrete on the face (base) and one at the top; Yochim and Peritz never complained to him about the pavement;

Cross-examined:

Q. If you were called upon to swear, under oath, that this concrete was mixed in the usual manner, and the usual proportions of sand, cement, and gravel put down upon a foundation that is usually made, would you be able to swear that it was, or not?

A. Yes, I would. . . . The cement was supposed to be one cement, three sand, and five gravel.

Q. Well did it contain those proportions?

A. Yes, sir, it did. I was on the job, and saw it mixed.

Q. Would you call this job, after Mr. Babst was finished with it, a first class job?

A. 1 would.

Sam Milan is the workman who put down the pavement; saw it about three weeks ago; made an examination of it; there was no cement broken; it was in first class condition; has not been working for Babst for eight or nine months; the only place where there is a break is where they put a patch, - on the side towards Saratoga Street.

Solomon Peritz, one of the defendants swears that the pavement is not in good condition; that "it is cracking; there are holes in it, like a honeycomb for want of proper mixture; on the side towards Saratoga Street, by the door, where Mr. Babst put in a piece of sidewalk, that is going to pieces, cracked, and broken all to pieces; . . there was gravel and little chips of wood in it coming out and leaving holes all over the surface;

Q. How large are those cracks now?

A. I couldn't say - like a crack in a piece of china. on the side the cement is going all to pieces, crumbling to pieces, there is a space bigger than his hand breaking off; the

top also is breaking off in front of the theatre; the cement seems to have raised and the edge is all breaking off; there are cracks on the sidewalk; one of them is large enough to put a lead pencil side ways, it runs about 18 inches; the top is rubbing off; there are two holes in it, one of them is big enough to put his finger in, $2\frac{1}{2}$ inches big, very near half an inch deep; the top is cracking all over like cracks in porcelain and all the corners are breaking off; never had any repairs made cracks started within 30 days after work was done; he is ready to pay the $33 for the lumber at any time; the stains were one of the reasons why he did not pay; there was not a proper foundation laid to hold up the cement; where the cement meets the sill it is receding and leaves a hole.

M. B. Tournillon has the title of assistant engineer and general foreman for the sewerage and water board for the last 15 years; has had 20 years experience in concrete pavements; has examined the pavement sued for; the work was not properly done; the material used was dirty; there were foreign substances in the sand that caused those little holes; he picked out wood and a couple of pieces of shell; the sand "was sifted with a sifter they usually use for that class of work, but the mesh is so large it allows these particles to go through; I guess the sifter they used has about 12 holes to the square inch, that is about a little smaller than a lead pencil; now a pebble or piece of brick, or something like that, smaller than the hole, would go through the sifter; a pavement containing holes like that is not a first class job; there are cracks on the river side of the building, called "hair-cracks; they are due to putting on the cement not wet enough, and the sun heating it quickly causes an initial set which draws the cement together and the little cracks will go through; these cracks should not occur in a first class job, because they can be prevented; he did not find any cracks in the pavement, but found cracks in the joints where the two pavements joined; there was a crack extending between the pavement and leading from the shillinger walk to the building line; what caused it, he does not know; it was about the size of a lead pencil; but that is not in the

pavement and did not hurt it; it might be that the pavement
stayed rigid and the sidewalk moved; or _vice versa_; or it
might be that both moved; plaintiff put a patch about one
foot wide by eight feet long on the side of then old schillin-
ger side walk, and there was a crack there, "not in the pave-
ment itself but in the joint, where he joined on to the old
pavement"; the stone he put in went down fully half an inch;
he did not notice any part of the pavement where the top was
rubbing off; there was a hole pointed out to him between the
words "Fern Theatre"; he thinks it is in the flooring; but it
is impossible to get a trowel on that piece to finish it nat-
urally; that is the only place he knows; the hole was of the
thickness of blotting paper; the pavement had broken in small
pieces between the flooring of the main building and the floor-
ing of the entrance; he "got a little piece out about the size
of one of his little fingers, and there were other cracks, about
an inch long and one quarter of an inch wide, not more than
a quarter of an inch thick; taking all the pavement as a whole
he does not consider it a first class job -; a pavement pro-
perly laid in the proportions fixed in the contract would make
a first class piece of work; "that is a very good mix; it is
above the ordinary for sidewalk work; the concrete itself was
first class; these hair-cracks would show up inside of a few
days, the moment the schillinger is dry; these hair-cracks do
not affect the strength of the cement " it is simply for
appearance, and nothing else; . . . all the work I saw was a
good mixture of sand, cement, and gravel"; by putting a joint
between the pavement and the sill it met, the chances are the
vacant space would not have taken place.

The defendant has mistaken his remedy. He had no right
to refuse absolutely to pay for the work he had received and
was enjoying. The jurisprudence of this State is that a con-
tractor who has delivered his work to the owner may sue him
when he has received it and is in the enjoyment of it; and
that the contractor may recover the value of the work which
has inured to the benefit of the owner, although the work be
defective or unfinished; if a price has been agreed upon the

remedy of the owner is a reduction thereof to an amount neces-
sary to perfect or to complete the work according to contract.
C. C., 2769 (2740); 3 La., 1; 4 La., 465; 6 La., 658; 7 La.,
134; 3 R., 10 ; 6 A., 202; 15 A., 220; 124 La., 300; 12 Ct.App.
126; 3 Pothier Louage 425. X

No one ought to enrich himself at the expense of another,
C. C. 1965 (1960).

To the same effect is the common law. We read in 15
Am. & Eng. Enc. Law p. 1093 ⸹ 10:

"Where a party employed to perform designated ser-
vices for another, unintentionally performs such services
defectively and not in strict accordance with the terms
of the contract, he cannot recover the remuneration sti-
pulated for in the contract, because he has not done that
which is to be the consideration for it. Yet if the
other party derives any benefit from such services the
law will imply a promise on his part to pay such an
amount as the benefit is reasonably worth, and this
amount is recoverable as on a quantum meruit. This rule
is supported by a multitude of authorities and may be
considered as well settled, although it has been said
that courts of eminent authority, both in England and in
the United States, have held that no recovery can be had
for labor furnished under a special contract unless the
contract has been performed according to its terms or its
performance has been dispensed with by the other party.
Such a recovery is permitted because of the hardship re-
sulting to the person performing the services in withhold-
ing from him all compensation whatever for his work and
labor, when by reason of his failure to perform the sti-
pulations of his contract he can maintain no action upon
it, and because of the unquestionable advantage which a
contrary rule would give to the party who receives and
retains the benefit of his labor. ϒ The amount recoverable
depends upon the extent of the benefit conferred having
reference to the contract for the entire work, and this
is usually the contract price, less the damages caused by
not complying with the exact terms of the contract".

See also 9 C. J., 739 § 78 - id 818 § 155 - id 820 § 157.

The defects in the pavement as set forth by the answer and those charged by the testimony are entirely different. According to the answer the materials used in the concrete were not of the quality nor mixed in the proportion mentioned in the contract; according to the testimony it is established beyond a doubt that the materials and the mixture were of the first quality and above the ordinary for sidewalk work. The defense is driven to denying that the work was properly done. The plaintiff and his laborer who laid the cement, and the employee of the defendants who superintended all the work done on the theatre testify that it was a first class job.

The defendant denounces the pavement along the whole line; he says it was full of holes, honeycombed, cracked, broken, crumbling to pieces, the top rubbing off and the corners falling; the stones sinking and receding from one another. His evident exaggerations weaken his testimony. His expert witness, Tournillon, points out only three defects in the pavement:

1o the presence of a piece of wood and a couple of pieces of shell that had passed through a quarter of an inch sieve; to this objection the rule "de minimis" is applicable; 9 C.J. 739 § 78.

2o hair-cracks on the river side of the building; but these hair-cracks affect only the looks but not the strength of cement;

3o between the old and the new pavement there was an open joint about one quarter of an inch wide; that might have been caused by the settling of the new or of the old pavement or by both; he could not lay the blame on plaintiff. On the sidewalk a stone laid by plaintiff had settled half an inch.

These defects are so slight in their nature as not to amount to redhibitory vices; they call at best for a diminution of the price. The defendants have used the pavement, and notwithstanding all its defects, they have not deemed it necessary to make any repairs to it.

As was said in the case of Clark vs. Kemper, 3 R., 10:

"In this case, however, it appears that the owner never had any repairs made, and that he used and sold

431

■

house; and the evidence, with regard to the real value of the work, is so uncertain and unsatisfactory, that 't is impossible for us to find out what amount should be deducted from the plaintiff's claim, or to say that they are not entitled to the amount claimed in their petition". *114 La 21 —*

The stone upon the sidewalk for which the plaintiff claims $250, and which has settled one half inch, and the charge of $7.50 for cementing the foundation, which plaintiff's attorney in his argument has abandoned, appear to us the only items of which we may relieve the defendants.

Plaintiff is entitled to a privilege upon the lot and buildings upon which the work was done. C. C., 3249 (3216); 25 A., 518 (520); But the defendants are not liable in solido. 19 Baudry; Lac p. 790 3019; C. C., 2872 (2843), 2093 (2088).

It is therefore ordered that the judgment herein be amended, and that the defendants Solomon Peritz and Joseph Yochim be condemned jointly to pay to the plaintiff Charles Babst, Jr. the sum of Two hundred and three dollars with five per cent per annum interest from August 21st, 1917 till paid and all costs of suit in both courts with privilege upon the lot and buildings at the corner of Robert and Liberty Streets.

May 15th, 1919.